[Filed April 5, 1892.]

## SAVERIO FIORE *v.* LADD & TILTON.

BANKS—DEPOSIT IN ASSUMED NAME—CERTIFICATE OF DEPOSIT.—Where, in the regular course of business and without any circumstances tending to rouse suspicion, a bank receives from a stranger money which he deposits in a name assumed by him, the bank is authorized to repay him the money on the return of its certificate of deposit issued in the transaction, endorsed by the person making the deposit, although the endorsement be in the assumed name, and the money in fact belonged to the person whose name the depositor wrongfully assumed, unless before such repayment something occurs to indicate the true ownership or put the bank on inquiry thereabout.

FRAUD—NEGLIGENCE—GOOD FAITH.—Where A, either negligently or intentionally gives the control of his property to B, and thus places him in a position to defraud C in relation thereto, if a loss occur thereby without the fault of C, it should fall on A as between him and C, because the act of A facilitated the fraud.

PRACTICE IN SUPREME COURT—BILLS OF EXCEPTIONS—STATEMENT OF EVIDENCE.—It is unnecessary to recite in a bill of exceptions more of the testimony than is necessary to explain the objection to be urged on appeal. *State* v. *Drake*, 11 Or. 396, and *Janeway* v. *Holston*, 19 Id. 97, followed and approved.

Multnomah county: E. D. SHATTUCK, Judge.

Defendants appeal.   Reversed.

*S. B. Linthicum*, for Appellants.

*U. S. Grant Marquam*, for Respondent.

BEAN, J.—This is an action to recover eight hundred dollars on a certificate of deposit issued by defendants as bankers on the thirteenth day of April, 1891, in the name of Saverio Fiore, which, as plaintiff claims, defendants afterwards wrongfully paid and cancelled.   There was a judgment below for plaintiff, from which defendants appeal. The facts are these:   On April 13, 1891, plaintiff, who is an Italian, and can neither read nor write, and only speak the English language with difficulty, having on deposit with the Portland Savings Bank the sum of eight hundred dollars, was advised by a fellow countryman named Antone to withdraw his money from this bank and deposit it with

defendants. Acting upon this advice, the money was withdrawn from the Portland Savings Bank, and plaintiff, accompanied by Antone, went into the bank of defendants for the purpose of depositing the money, where it was placed on deposit. As to who had possession of and delivered the money to the teller of defendants, and what transpired at the time, there is a direct conflict in the testimony between the plaintiff and the teller, who are the only witnesses testifying on that subject. The plaintiff says he took the money, which was tied up in a handkerchief, from his pocket, and delivered it to the teller, saying he wanted to place it on deposit for three months; that the teller received the money from and delivered to him the certificate of deposit described in the complaint, and requested him to write his name in the signature book for identification, but he informed the teller he could not write, and offered to make his mark in the book. Antone, who was present, then spoke up and said: "I will write his name," and the teller allowed him to write the name Saverio Fiore in the signature book. He did not know the use of the signature book, or that Antone wrote the name Saverio Fiore as and for his signature. Afterwards, Antone, through fraud, obtained the certificate, forged his name thereon, presented and received payment thereof.

The teller testifies, that on the day named, the man the plaintiff calls Antone and plaintiff, both of whom were entire strangers to him, came to the bank together. Antone had possession of and delivered to him the money, saying he wanted to desposit it for three months, giving his name as Saverio Fiore, and wrote this name in the signature book, which is used as a means of identifying depositors. The certificate of deposit described in the complaint was thereupon issued and delivered to Antone, and the two men left the bank together. Two or three hours afterwards, Antone, with whom he had all the dealings, and whom he supposed owned the money, returned, saying he

had found a place where he could invest the money to a better advantage, and requested payment of the certificate, which he presented, endorsed with the name as written in the signature book, and it was thereupon paid and cancelled. During all his transactions with Antone concerning the deposit of the money and the issuance and delivery of the certificate, plaintiff was standing close by and did or said nothing to indicate that he had any interest or ownership in the money. At the time of the deposit of the money and payment of the certificate, the teller supposed and believed that the money belonged to the person making the deposit, and that his name was Saverio Fiore, as he represented, and did not know otherwise until long after the certificate had been paid.

It is also in evidence, and about which there is no dispute, that it is the general custom of banks in the city of Portland, where a person unknown to the bank brings money for deposit, gives a name as his own, and asks for a certificate of deposit, there being no suspicious circumstances, to issue to him such certificate in the name given, upon his signing the signature book, if he can write, without further inquiry, and to pay the money upon the return of the certificate endorsed with the name as written in the signature book; but where the depositor cannot write, it is the custom to ask certain questions, the answers to which are entered in the signature book as a means of identification.

The errors relied on here are in the giving and refusal of certain instructions by the trial court. The defendants requested the court to instruct the jury among other things as follows: 1. If the jury find from the evidence that the money was delivered to the receiving teller by a person other than the plaintiff, and that he deposited the same and signed the signature book, and thereafter returned the certificate of deposit properly endorsed, and received the money therefor, and the bank or the paying teller had no

reason to believe that he was not the owner thereof, the plaintiff cannot recover.   2. If you find from the evidence that it is a general banking custom, or a custom among the banks of the city of Portland, where a person brings money to a bank and asks for a certificate of deposit, and signs the signature book with a name which is not his own, and which the bank has no reason to believe is not his genuine name, to cash such certificate upon return thereof, with the proper endorsement thereon, without further inquiry, and that such were the facts in this case, such action on the part of the bank does not constitute negligence on its part.   3. If you find from the evidence that the plaintiff came into the bank with a third person in this case, and stood by while the third person deposited the money, signed the signature book, and received the certificate of deposit, without protest or objection on his part, and that the teller of said bank did not know or had no reason to believe that the plaintiff was interested therein, and defendant thereafter repaid the amount of such certificate to such third person upon the return of such certificate by him properly endorsed, plaintiff is estopped in this case and cannot recover.

Each of these instructions being refused, an exception was duly noted and the ruling of the court thereon is now assigned as error.   These instructions were designed to state the law as applicable to the facts as contended for by defendants, and we think should have been given.   If, as defendants claim, the money in dispute was deposited in the bank by Antone, who represented his name to be Saverio Fiore, which the bank supposed to be true, and the certificate of deposit was issued and delivered to him intending thereby to make it payable to the person to whom delivered, and that he wrote the name Saverio Fiore in the signature book of the bank as and for his genuine signature, and afterwards, upon return of the certificate endorsed with the name appearing in the signature book, the money was paid

to him without any knowledge that it belonged to some other person, it seems to us clear, in view of the banking custom in such cases, that defendants are not liable to plaintiff in this action, although in fact the money may have belonged to him. Their contract was with the person with whom they dealt and who deposited the money, under the name by which he was known at the time, and their obligation was to re-pay the money to him or his order, upon the return of the certificate properly endorsed. They contracted with him under the name of Saverio Fiore, believing that to be his true name, issued and delivered to him the certificate of deposit in such name, thereby intending to make it payable to the person to whom it was delivered; and although they may have been mistaken in the name of the man, the person with whom they dealt was the person intended by them as the payee of the certificate, designated by the name by which he was known in the transaction; and when he returned the certificate, endorsed with the signature appearing in the signature book, and it was paid, without knowledge of the claim of any other person, and under the belief that the money belonged to him, their contract was complied with. If Antone had possession of the money, deposited it in the bank, and dealt with it as his own, the bank had a right to assume, without further inquiry, unless there was something in the transaction itself to arouse suspicion, that the money belonged to him, and that he was dealing in his true name; and their contract, if the facts are as they claim, was to pay the money to him, or his order, and this they have done, and ought not now to be required to pay it again to a person with whom they had no dealings and who was in no way connected with the transaction. (*Robertson* v. *Coleman*, 141 Mass. 231; 55 Am. Rep. 471; *Emporia Nat. Bank* v. *Shotwell*, 35 Kan. 360; 57 Am. Rep. 171; *U. S.* v. *Nat. Exchange Bank*, 45 Fed. Rep. 163.)

It is argued, however, that because the certificate of deposit was in terms made payable to Saverio Fiore, the defendants were bound at their peril to see that it was paid to no other person, and it is immaterial from whom they received the money; and this we suppose was the view entertained by the court below, judging from the entire charge to the jury. This would probably be so if the contract had been between the defendants and Saverio Fiore, or had it been intended to make the certificate payable to him, but here, if defendants' contention be true, the contract was with the person with whom they dealt and to whom the certificate was issued and delivered, known in the transaction as Saverio Fiore, and with no other person; nor was it intended that the certificate should be paid to any other person, unless by the order of the person dealing with the bank. The obligation of the bank was to pay the money on the order of the person from whom it was received and with whom the contract was made, under the name by which he was known at the time. While a bank may be bound at its peril to see that the money of a depositor is only paid to himself or order, it may safely assume, without further inquiry, in the absence of suspicious circumstances, that the name by which the depositor, if a stranger, is known in transaction is his true name.

The question in this case is, with whom did the bank deal, and who was intended as the payee of the certificate? The name is only one means of determining that fact. The name used in a transaction is only one means of identifying the person, and is often not the safest and best. As was said in *Robertson* v. *Coleman, supra,* "The name of a person is the verbal designation by which he is known, but the visible presence of the person affords surer means of identifying him than his name." This is not a case where a person known to the bank represented a third person; but according to the defendants' contention is one in which the bank was dealing with a person under the

assumption justified by the circumstances of the transaction, that he had given his true name, and was the owner of the money and entitled to deposit and draw it, and this question ought to have been put to the jury.

There is yet another reason why it seems to us these questions should have been submitted to the jury. If, as defendants contend, the money was in the possession of Antone, and by him deposited in the bank, it was with the knowledge and consent of plaintiff, who was present at the time, and who thereby, either negligently or intentionally, placed Antone in a position to perpetrate a fraud upon the bank; and in such case the loss should fall upon the one who has been the occasion of it. Allowing that plaintiff intended no wrong by suffering Antone to deal with the money as his own, and that neither he nor the bank was at fault in the matter, the loss should fall upon him, because by his act he facilitated the fraud. (*Stout* v. *Benoist*, 39 Mo. 277; 90 Am. Dec. 466.)

In the language of Lord Mansfield, in *Price* v. *Neal*, 3 Burrows, 1357, "It is a misfortune which has happened without the defendant's fault or neglect. If there were no neglect in the plaintiff, yet there is no reason to throw off the loss from one innocent man upon another innocent man. But in this case, if there were any fault or negligence of any one, it certainly was in the plaintiff and not in the defendant."

That portion of the instruction of the court, that the man who controlled the money, whether he was accompanied by other persons or not when he went into the bank, and who negotiated with and delivered the money to the teller, might properly be deemed by the bank the owner of the money, and if the bank people, notwithstanding this fact, accepted and acted upon the statements of Antone, it was a question for the jury, whether in so doing they exercised reasonable diligence, was, we think, when viewed in the light of the entire charge and plaintiff's

testimony, a presentation of the case as made by plaintiff, and no error of which defendants can complain.   If plaintiff was in possession of the money, and delivered it to the teller for deposit, and the teller allowed Antone to write plaintiff's name in the signature book, as and for his signature, it was perhaps a question for the jury whether the teller exercised reasonable care and diligence in so doing, although from the evidence in this case, it would seem there is but little room for controversy on that question.

At the argument we were urged to affirm the judgment in this case for informality in the bill of exceptions, in stating all the evidence given on the trial as extended from the stenographer's notes in place of only so much thereof as is necessary to explain the exceptions taken; but as the errors relied on are in the giving and refusal of certain instructions, which are so stated in the bill of exceptions as to be easily understood, we do not feel justified in refusing to examine them, but cannot refrain from condemning the practice which seems to be frequently adopted, of making a part of the bill of exceptions all the evidence given on the trial when no questions are presented for review calling for an examination of the evidence.   This practice is in disregard of the plain provisions of the statute, Code, § 232, as well as all rules governing the preparation of bills of exceptions.   (*State* v. *Drake*, 11 Or. 396; *Janeway* v. *Holston*, 19 Or. 97.)   It is unnecessarily expensive to litigants, and imposes the arduous task upon this court of examining a vast amount of irrelevant and immaterial matters.   The bill of exceptions in this case contains of evidence over sixty type-written pages, while the facts upon which the questions sought to be reviewed are founded could have been more clearly and intelligibly stated in two or three.   Such a practice ought not to be encouraged; and in taxing costs in this court the clerk

XXII OR.—14.

will be directed not to allow anything on account of the evidence contained in the bill of exceptions.

The judgment is reversed and a new trial ordered.