NICHOLLS, J.
Plaintiff alleged that she was the owner of a tract of land in the parish of St. Landry containing 100 arpents of land, which she described. That on December 1, 1905, she sold the same by notarial act before Estorge, notary, to Louis Chariot. That the consideration of said sale was the sum of $3,500, represented by four promissory notes secured by mortgage and vendor’s privilege on above-described property, one for the. sum of $500, and three others for the sum of $1,000 each, payable respectively in one, two, three, and four years from date.
That said vendee Louis Chariot granted, and your petitioner retained, a special mortgage and vendor’s privilege in her favor to secure the full and final payment of said notes, which said mortgage and vendor’s privilege was duly recorded in the records of this parish in Mortgage Book 41A, folio 176.
That the said vendee, Louis Chariot, never delivered said notes to your petitioner, but, on the contrary, retained possession of the same, and a short time thereafter deposited them with one Pierre Mistric, as security of a loan for $300, and subsequently thereto, without the knowledge or consent of your petitioner, and without any rights so to do, fraudulently acquired possession of said notes, and without her knowledge or consent, and thereafter, to wit, on January 25,, 1907, caused the mortgage securing said notes and your petitioner’s vendor’s privilege to be canceled and annulled.
That the said Louis Chariot never having paid said notes, was without any right to have said mortgage canceled and erased, and the cancellation thereof by Yves Andrepont, clerk of the Sixteenth judicial district court for the parish of St. Landry, La., without any evidence of payment thereof to your petitioner, was null and void, and a fraud practiced on your petitioner by the said Louis Chariot. Petitioner further avers that she was not aware of the cancellation and erasure of the said mortgage until October, 1907.
Petitioner further shows that the said Louis Chariot sold said property to one Da-man Durio (who was fully aware. of the fraud to be practiced on your petitioner) for an alleged cash consideration of $2,000 duly recorded, and subsequently the said Durio resold the said property to the said Louis Chariot for $2,500, on terms of credit, payable in 10 years, and in consideration of said purchase price executed 10 certain promissory notes, secured by mortgage, duly recorded, on said land, for $250 each, and payable in 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 years respectively, dated November 28, 1906.
*495 That subsequently, to wit, on October 5, 1907, Louis Chariot sold to Yalerie Gallien the following described half of said property, to wit, a certain tract of land, with buildings and improvements thereon, situated at Belle-vue, in St. Landry parish, La., containing SO arpents, bounded on the north by Numa Richard, south by A. -Andrus, east by property of vendor, and west by Joseph Bourque, being a part of same property which vendor herein acquired from Damon Durio on November 28, 1906, by act before H. E. Estorge, notary, and recorded in Conveyance Booh, p. 638, on the following terms of credit, to wit, 10 promissory notes secured by recorded mortgage on the said land for $200 each, and payable respectively in 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 years from date.
That she believes that some of said notes executed either by Louis Chariot to Damon Durio, or by Valerie Gallien in payment of said purchase price, are now in the hands of one Pierre Mistric, who should be made a party hereto. That she is entitled to have said illegal cancellation of her aforesaid mortgage annulled and set aside as having been done in fraud of her rights, and to have said notes delivered to her as owner thereof, and a decree in her favor subordinating all future mortgages executed by Louis Chariot on said land to your petitioner’s special mortgage and vendor’s privilege.
In view of the premises, she prayed that Louis Chariot, Xves Andrepont, clerk of the Sixteenth judicial district court of Louisiana, Damon Durio, Yalerie Gallien, and Pierre Mistric be cited to appear and answer thereto.
That there be judgment decreeing her to be the owner of the four notes executed by Louis Chariot in consideration of the purchase price of the property herein described, and identified with act of sale by the paraph of notary before whom said sale was passed, and now on file in the clerk’s office in this parish in Mortgage Book 41A, p. 176, and that said notes be delivered over to her.
That the mortgage and vendor’s privilegie executed by Louis Chariot to secure the payment of said notes be decreed to. have been fraudulently canceled and erased, and that; said cancellation be annulled and set aside, and your petitioner’s mortgage and vendor's privilege be reinstated as if no such cancellation had ever been made. That petitioner’s right to proceed against Xves Andre-pont, clerk of court for this parish, and his bondsman, for such damages as she may suffer by reason of such illegal cancellation, be reserved.
She further prayed for all general and equitable relief.
Mistric answered. After pleading a general denial, he averred that he was then and had been for several years a lender of money and purchaser of notes secured by mortgage, such as were issued by the parties to this suit. That this was a well-known fact, so much so that people seek him and solicit these loans without any effort on his part to obtain them. That this is what happened in this case. That the notes held by him were acquired by him in good faith before maturity and for a valuable consideration, and therefore he is the bona fide holder and owner of the same, for being in utter ignorance of any secret equities (if any such existed) between the parties thereto. That he became the holder and owner of aforesaid notes upon the faith of the records as made up by the parties hereto. That he was personally unacquainted with any of the parties to this suit at the time he loaned them the money declared upon, and, as is herein-above stated, he acted solely upon the good faith of the records of this parish, such as had been made up by the parties to this suit.
In view of the premises, he prayed to be hence dismissed and for general relief.
Durio answered. After pleading the gen *497 eral issue, he averred that his connection with the transaction herein referred to was had at plaintiffs instance. That his participation therein was at her earnest request. That, when plaintiff was first informed of the illegality of her title, she readily consented to restore to the defendant, Louis Chariot, his property, whereby he might mortgage and sell the same 'as he saw fit. That she voluntarily consented to every subsequent transfer of the property, and to the surrender and cancellation of her notes, to the end that ultimately she might defraud Louis Chariot’s wife and child of any property he might die possessed of. That she received a portion of the -money realized from the sale of the property. That some of this money she intrusted to respondent, whereby he might prevail upon Louis Chariot’s wife to consent to a divorce being obtained against her, to the end that Chariot might thereafter marry her, and as his widow she might demand and receive, if not all, at least a large proportion of the property he might die possessed of. That it was with this end in view the first contract was entered into, and, having ascertained it could'be successfully assailed after Chariot’s death by his wife and child, she consented to restore the said property to him (Chariot), whereby he might sell and dispose of the same as he saw fit, hoping always to become in some way 'the beneficiary of the proceeds or cash he might realize therefrom, to the prejudice of his said wife and child.
That it was at her instance the money was borrowed from Mr. Mistrie upon both occasions. That to secure the second loan it was necessary to cancel the first notes, to which she consented. That she never was the real owner of said notes. That she consented to their insertion in the sale, and as having accepted them, merely as accommodation to the said Chariot. That when this latter sold the property to respondent she again consented to this disposition being made, as indeed she consented to everything that was done in relation to all transactions in her petition disclosed, having ascertained she had no title to the property Chariot has sought to convey to her.
' That if fraud was practiced, or sought to be practiced, in any or all of said transfers, it was being attempted solely by the plaintiff herein.’ That -having lived in open concubinage, for 20 years or more, with Louis Chariot, she was desirous of obtaining all of his property, and being foiled in her purpose she now sets up the cry of fraud.
He adopted the allegation of his codefend-ant, Louis Chariot, wherein he alleged “this suit is of a speculative nature purely and simply.”
In view of the premises, he prayed for dismissal of this suit at plaintiff’s costs and for general relief.
Gallien answered. He denied generally the allegations of plaintiff’s petition. He then admitted that he purchased from Louis Chariot the property described in plaintiff’s petition in good faith and for a valuable consideration upon the faith of the records as disclosed in the clerk’s office of this parish.
In view of the premises, he prayed tó be hence dismissed with costs, and for general relief.
Andrepont answered. .He pleaded the general issue. He then admitted that he was the clerk of the court, and as such canceled the mortgage which was given and granted to secure the payment of the notes declared upon in plaintiff’s petition. But he averred that he was justified in so doing, the notes having been presented to him marked “Paid,” with signature erased thereon. That, in canceling the mortgage as above stated, respondent acted in good faith and with sufficient evidence to satisfy him in so doing. In view of the premises, he prayed to be hence dismissed with costs, and for general relief.
The defendant Louis Chariot answered. *499 He pleaded, first, the general issue. Further answering, he averred that the property described in the plaintiff’s petition is and was at all times the lawful property of respondent, for having originally acquired the same from the United States of America under its homestead laws, as would be fully shown upon the trial hereof.
That thereafter, while living in open concubinage with the plaintiff (his wife and child, the issue of his lawful marriage, being alive), he was induced by the plaintiff, while living in open concubinage as aforesaid, with a view of depriving his wife and child of the property at respondent’s death, to pass to her what purports to be a transfer of his said property, as was evidenced by the purported transfer before H. D. McBride, notary public, recorded in Conveyance Boot No. 3, p. 421, clerk’s office, St. Landry.
That thereafter the plaintiff, being desirous of raising some money upon what she supposed was her property, came to Opelou-sas with that end in view, and having sought legal advice was informed her title was valueless. That thereafter, being convinced of the valuelessness of her said title, she voluntarily returned to respondent his property, as was evidenced by the act dated December 1, 1905, before Henry E. Bstorge, notary public, recorded in Book No. 4%, p. 493, clerk’s office, said parish.
That there was no real consideration given or paid respondent by the plaintiff to obtain his said property under the act first herein referred to. Moreover, this attempted conveyance of respondent’s property was in contravention of a prohibitory law (article 1481 of the Civil Code of 1870 of this state), and as such vested in plaintiff no valid title. That, having voluntarily restored to respondent his said property, he (respondent) was at liberty to sell and dispose of, the same as he saw fit. That it was well understood between the plaintiff and respondent, at the time of the return to respondent of his said property (December 1, 1905), that the consideration set out in said transaction was not real; that it was embodied in said act whereby respondent might through plaintiff borrow money upon the notes given as the purported price of the sale. That money was obtained thereon with this full understanding. That thereafter, respondent being desirous of obtaining more money upon his property sold the same to Mr. Damon Durio (the plaintiff consenting thereto), and, Mr. Durio having resold the property to respondent, the vendor’s lien and privilege notes, the consideration of said sale, were pledged and pawned to Mr. Pierre Mistrie to secure the indebtedness due him for money borrowed from him.
That throughout all these transactions the plaintiff was present in person, or represented by an agent, and readily consented to all that was being done in hope of ultimately being benefited thereby. That, from out of the proceeds of the second loan by Mr. Mis-tric, there was $100 of the money turned over to plaintiff’s agent, Mr. Damon Durio, with which this latter was to induce respondent’s wife to consent to a divorce being obtained against her to the end your respondent after-wards marry the plaintiff, when she would, at his death, put in her claim as a widow in necessitous circumstances, and sue for, and obtain, from his succession, the sum of $1,000, all of which was to be accomplished to the prejudice of respondent’s lawful wife and child, the issue of his lawful marriage as aforestated.
That, as previously stated herein, there was no consideration given or paid respondent for his property by the act of January 26, 1898, before H. D. McBride, notary public. That the act of December 1, 1905, was intended to restore respondent' his property, to the end he might mortgage or sell it as he saw fit. That in the subsequent transfers of the property to Durio, and this latter to your respondent, the plaintiff was present and con *501 senting thereto, and, having assented to the condition of affairs now existing, for purposes of ultimately defrauding respondent’s lawful wife and child of the property he might die possessed of, this court will not lend its aid to settle her dispute relative to contracts reprobated by law. That she could not be heard to ask for relief from a violation of the law. That the law will leave her where her conduct has placed her.
That this suit is of a speculative nature, whereby plaintiff hopes to obtain something for nothing. That while respondent might not originally have invoked his own turpitude, now, however, when the plaintiff seeks to defraud him of his property, after having restored it to him, to which he was of right entitled, he has the right to set up the illegality of the original contract entered into by; him, and to invoke it as a shield to preserve and protect that which lawfully belongs to him.
In view of the premises, respondent prayed that the demands of the plaintiff be rejected, and that he be hence dismissed with costs, and for general relief.
The district judge assigned written reasons for his judgment, which we copy, commenting upon it later.
He said:
“He had arrived at the following conclusions: That the plaintiff had come into court with unclean hands. That the original purpose of one of the defendants, Louis Chariot, was to divest the lawful wife and children of the said Louis Chariot of the property of which he should have died possessed. The court is further of the opinion that when plaintiff went to live with Louis Chariot it was for the purpose of living with him in open concubinage, and shé little thought of obtaining value for any services she might render. As a matter of fact, he possessed nothing at that time. They lived in a state of concubinage for 30 years or more, and it was while so living that he acquired the property in suit. After having begotten some 12 children, the issue of this illicit concubinage, and these had grown up, trouble began to arise in the conduct and manner of the property, attributable, as the defendant testifies, to the insubordination of these children. It was further testified that with a view of raising money upon the property which Louis Chariot had sold to the plaintiff herein it was ascertained that plaintiff’s title was valueless. It was then that steps had to be taken whereby money could be realized to protect one of the children from criminal prosecution, and to pay the debts which both of these parties had contracted. After consulting w-ith a notary, who, in turn,, consulted with an attorney at law, it was concluded that the way out of the difficulty would be for the plaintiff to sell to the defendant the property upon terms of credit, whereby this latter, as well as the plaintiff, could realize money from the sale or pledge of the notes. This was done. Subsequent to this, for reasons best known to the parties, but for reasons testified to-by Mr. Durio and others, it was deemed best that Chariot should dispose of the property to-which he had title, and that the plaintiff should consent thereto and surrender her outstanding notes, whereby these might be canceled and annulled, and the holder of the notes which Chariot should give as the purchase price of the property would he fully protected. Accordingly, a sale of the property was made by Chariot to Mr. Durio, who, in turn, resold the same property to Chariot, taking his notes therefor. But before Mr. Mistric would surrender the notes originally given by Chariot to the plaintiff, it was necessary that the plaintiff should come in and authorize the cancellation of the notes which she owned and which were then in the hands of the money lender, Mr. Mistric. To effectuate this purpose, she came to Opelousas in company with Louis Chariot, and instructed Mr. Estorge, the notary, who had been attending to their business, to take her notes, procure the cancellation of the mortgage which was given to secure their payment, to the end that Mr. Mistric would obtain the Chariot notes, given as the purchase price of the property from Durio, free from any incumbrance then existing on the property. It must be borne in mind at all times that the plaintiff was a participant in all of these transactions; that she received money from out of the first transaction or deal, and that she received additional sums at the time she authorized the cancellation of the notes.
“The court believes that there is no question but that she authorized Mr. Estorge to procure the .cancellation of notes which she surrendered for this purpose; that this authority was given and granted to Mr. Estorge in the presence of the witnesses, Louis Chariot and Damon Durio; and that the same was voluntarily given, with full knowledge of the consequences to ensue therefrom. Mr. Estorge’s testimony leaves-no doubt upon this point. The court is further of the opinion that, in accepting money upon this second occasion, the plaintiff was in a measure ratifying and confirming all that had heretofore been done, and in this way is estop-ped from contesting the validity of the sale she now seeks to set aside. The court feels that it would gladly relieve her if it could do so, and pay her compensation for such services as she rendered the defendant Louis Chariot. None of the cases cited by the attorneys of the plain *503 tiff fit the facts of the case. In those cases the parties had lived together upon a different basis, plaintiffs having orignally gone to work for the person with whom they subsequently lived in concubinage, the original intention of the parties being one to work and receive pay for services rendered and to be rendered. Here the ease is different. Concubinage was doubtless the intention of the parties when they first went to live the one with the other, and this was carried on for years without interruption. It was only when the plaintiff began to think that possibly she would be left m the lurch upon the demise of the defendant Louis Chariot that they went before the notary and he sold her his property for services rendered. When, however, as is herein previously stated, she was informed of the worthlessness of her title, then she began to devise ways and means whereby she might deprive the lawful wife and children of their property at the time of Chariot’s death. To this end the property was sold, as testified by Mr. Durio, and she intrusted him with $50 she had received from the proceeds of the sale whereby to procure a divorce from the lawful wife, to the end that she might marry the defendant Louis Chariot, or by some other means obtain what he should die possessed of. As previously stated, this plaintiff comes into court with unclean hands; she is responsible for the situation in which she finds herself, and is not entitled to any relief. The court must leave her where her conduct has placed her, it being an elementary rule of law that it gives no action, to enforce a contract without a cause, or for a false or immoral cause, whoever may demand it. Gravier’s Curator v. Carraby’s Ex’r, 17 La. 118, 36 Am. Dec. 608; Hennen’s Digest, vol. 2, p-. 1007, No. 1; Cross on Pleadings, p. 82, c. 5; Fabacher v. Bryant, 46 La. Ann. 820, 15 South. 181.
“For all of which reasons, and by reason of the law and the evidence, which is in favor of the defendants and against the plaintiff, it is, by reason thereof, ordered, adjudged, and decreed that this suit be, and the same is hereby, dismissed at the costs of the plaintiff.”
Opinion.
Plaintiff and defendant are colored people. Plaintiff was for some 30 years the adulterous concubine of defendant. Twelve children were the issue of that connection. On the records plaintiff, in 18 — , was the owner of 100 arpents of land in the parish of St. Landry, by conveyance in the form of a sale from the defendant Chariot. The situation was changed on the 1st of December, 1905, by the defendant Chariot appearing on the records as the vendee of the same property from the plaintiff Apolina Richard for the price of $3,500, represented by four negotiable promissory notes, one for $500, and three for $1,-000 each, payable on the 1st of December, 1906, 1907, 1908, and 1909, respectively, secured by special mortgage duly recorded on the property sold, the notes being made to the order of and indorsed in blank by the purchaser, Chariot. The registry of the mortgage was erased by the recorder of St. Landry on the 25th of January, 1907, by an entry written across the registry of the mortgage in the mortgage book that:
“The 4 notes given to secure the payment for which this mortgage was granted, and retained having been presented to me duly paid, I hereby cancel and annul the mortgage, see note in original act No. 56,349. Signed Yves Andre-pont, Clerk.”
The notes referred to were then in the possession of Mr. Henry Estorge, and were produced by him for the erasure of the mortgage, the name of the maker of the notes being erased. The only note of the four notes which had then matured was the note for $500 due on December 1, 1906. The four notes were not, at the time of the execution of the same and the granting of the mortgage, delivered to the vendor, but were permitted by her to be retained by the maker in his possession. This shifting of the position of the parties to the original act was by the consent of both. Its binding force is recognized by the plaintiff, as the ownership of the notes then given is made by her the basis of her present suit. The reason or motive for this is shown to have been the inability of the parties to the original act to borrow money on the faith of the title of the property as it then stood in the name of Apolina Richard.
In view of that fact, it was determined to have her appear as holder and owner of negotiable notes secured by special mortgage on the property sold by her. The object in view was attained, as money was lent by Mistrie on a note with these notes given as *505 collateral thereto. In 'her petition in this ease plaintiff alleges:
“That said vendee, Louis Chariot, never delivered said notes to petitioner, but, on the contrary, retained possession of the same, and a short' time thereafter deposited them with one Pierre Mistric as security of a loan for $300, and subsequently, without the knowledge or consent of petitioner, and without any right so to do, fraudulently acquired possession of said notes, and without her knowledge or consent, and thereafter, to wit, on January 25, 1907, caused the mortgage securing said notes and petitioner’s vendor’s privilege to be canceled and erased.”
The plaintiff Richard was interested in borrowing money on these notes, and the defendant was interested in having her do so. The good faith of Mistric in these matters is not questioned. It is immaterial whether the notes were used as collateral security by Chariot or by the .plaintiff, as she had placed them in the possession and under the control of Chariot, with all the indicia of ownership in him, and the public has the right to deal with him as such. As a matter of fact, we are of the opinion that they were held by Mistric as collateral for a note of the plaintiff. These mortgage notes were subsequently obtained from Mistric and placed in the hands of Henry Estorge for the purpose of their cancellation and the erasure of the mortgage, in view of a larger loan to be made and the substitution for these notes of negotiable mortgage notes which had been subsequently executed by Chariot on the property.' He (as stated) took the original notes to the recorder, and had the mortgage which secured them erased. We are satisfied under the evidence that the notes were placed in Estorge’s possession in the interest of and with the consent of the plaintiff for the purpose of having the erasure made in aid of the substitution of the new notes of Chariot for the original ones. Estorge’s goo^ faith in the matter is not questioned, nor is that of Gallien.
Plaintiff claims that there is and was no written evidence of her having given Estorge authority to make the substitution of the new notes for the original notes and to erase the original mortgage, but no law required such written evidence. When with her consent the original negotiable mortgage notes were placed in Estorge’s possession, with all the indicia of ownership in the same, under his control, in her interest, for the purpose of making the substitution of notes, she thereby committed and bound herself to whatever action he might take, with respect to the notes when dealing with parties acting in good faith on the strength of the situation.
The good faith of Andrepomt is not impugned, and, besides, Estorge was duly authorized by plaintiff in the premises: He was authorized to make, as he did, the erasure of the mortgage. The object of the present suit is to divest Mistric and Gallien of the rights which they have acquired in good faith and relying on plaintiff’s conduct and on the records, and to regain quoad them her original position.
The real parties in interest in this suit are Mistric and Gallien. Durio, Estorge, and Andrepont are nominal parties, made so incidentally and as part of the history of the ease. No judgment against them is sought.
Plaintiff’s demand is neither just nor well founded, and the relief she seeks cannot be accorded her by the court. The necessities of the case do not call for any discussion of the rights of the plaintiff as affected by the fact that she was the adulterous concubine of Chariot, as Mistric’s rights and those of Gallien are not, under the circumstances of this case, dependent upon such discussion or a decision in respect thereto. Were the fact otherwise, they would have the legal right to question plaintiff’s standing in court, and to resist the claims which she advances by parol, as well as written, evidence.
Eor the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed.