Argued by respondent, submitted on briefs by appellant, December 19, 1923, affirmed February 5, 1924.

# ASTORIA NATIONAL BANK *v.* STATE BANK OF PORTLAND.

### (222 Pac. 588.)

**Equity—Equity will not Assume Jurisdiction When Remedy at Law is Available if Plaintiff by Its Own Acts had not Cut Itself Off from Pursuing It.**

1. Where, under a contract between plaintiff and defendant bank, as construed by plaintiff, the latter had an adequate remedy at law against defendant bank, if solvent, to recover a certain note delivered to defendant in exchange for the latter's trade acceptance of one of defendant's customers, or an action for defendant's breach of contract, or, if defendant was insolvent, an action against the superintendent of banks to recover possession, equity would not assume jurisdiction to compel superintendent of banks to return the note, even though the evidence disclosed plaintiff would not be entitled to pursue its legal remedy, because the effect of the contract was to enable defendant to make an excess loan in violation of Section 6207, Or. L., and to deceive the superintendent of banks and depositors and stockholders of defendant bank as to the ownership of the note.

**Estoppel—As Between Two Innocent Parties One Enabling Fraud to be Committed to Their Injury must Suffer.**

2. Where one of two innocent parties must suffer for the fraud of another, the one who has enabled the fraud to be committed must be the sufferer.

**Estoppel—Plaintiff Denied Right to Recover Back Note Put in Defendant's Hands as Agent, When Latter was Thereby Permitted to Deceive Others Under Claim of Absolute Ownership.**

3. Assuming that, when plaintiff and defendant bank exchanged securities, plaintiff accepting defendant's trade acceptance executed by its customer, and defendant in exchange therefor taking a note payable to plaintiff, each intended to hold the security for the other as agent, and assuming further that equity had jurisdiction over the transaction to enable plaintiff to recover the note upon defendant's failure to collect it, and subsequent insolvency, equity would not grant relief where plaintiff by its acts permitted defendant to hold itself out as the absolute owner of the note, and thus enabled defendant not only to make an excess loan to its customer, in violation of Section 6207, Or. L., but to deceive the superintendent of banks and the depositors and stockholders of defendant bank as to the ownership of the note.

From Multnomah: Walter H. Evans, Judge.

Department 2.

Affirmed.

For appellant there was a brief over the name of *Messrs. Norblad & Hesse.*

For respondents there was a brief over the name of *Messrs. Bowerman & Kavanaugh,* with an oral argument by *Mr. Jay Bowerman.*

RAND, J.—1. In this suit the plaintiff seeks to compel the defendant, Frank C. Bramwell, as state superintendent of banks, to deliver to plaintiff a promissory note for $7,000 payable to its order, which note was executed and delivered to plaintiff by one L. C. McLeod and was by plaintiff indorsed without recourse and delivered to the defendant bank. Subsequent to the indorsement and delivery of said note the defendant bank bcame insolvent, and, pursuant to statute, the superintendent of banks, on February 16, 1922, took over its property and business for the purpose of administering its assets and liquidating its indebtedness.

It appears from the testimony that in June, 1921, the Petersburg Lumber Company, a corporation, was a customer of the defendant bank and was indebted to it in an amount equal to, if not in excess of, the amount that the bank had authority to loan; that in order to make an excess loan to the Petersburg Lumber Company, the defendant bank, which was the Portland correspondent of the plaintiff bank, arranged with the plaintiff bank to take over and hold for the defendant bank a trade acceptance for $7,500, to be issued by said lumber company, and agreed to take in exchange for said trade acceptance and hold for the plaintiff bank, securities belonging to it equal in amount to that of the trade acceptance, and at the same time promised and agreed to re-exchange the securities if desired by plaintiff, upon demand.

It appears that, pursuant to this agreement, the Petersburg Lumber Company drew and delivered to the defendant bank a trade acceptance for $7,500, but to whom the same, by its terms, was payable, does not appear, and that the defendant bank then delivered the same to plaintiff, and that in exchange therefor the plaintiff delivered to the defendant bank two notes, both indorsed without recourse, one for $500, which has since been paid, and the note to which reference has been made. It also appears that by its terms the acceptance fell due on December 21, 1921, and, no payment being made thereon, the same was renewed by the Petersburg Lumber Company by giving a new acceptance payable to the order of plaintiff for the full amount of principal and interest, which acceptance, by its terms, was payable on March 21, 1922; that no part of this acceptance has been paid, and the Petersburg Lumber Company is insolvent. It also appears from the testimony that these exchanged securities were carried by the two banks as a part of their respective assets and not as rediscounts, and that because of the manner in which they were indorsed, no liability as an indorser attached to either bank. The evidence also shows that the defendant bank at all times has held itself out to be the owner of the note in question and that the note was in its possession and among the other notes belonging to it when the superintendent of banks took over its property and business, and that no demand for the return of the notes was ever made by plaintiff until after the defendant bank had become insolvent and its property had been taken over by the superintendent of banks.

There are some circumstances attendant upon the transaction from which it could reasonably be in-

ferred that the parties intended to make a complete transfer to each other of the securities thus exchanged and that they intended to pass the title and vest absolute ownership of the securities in the bank to which they were transferred, such as the plaintiff's charging against the account of the defendant bank the aggregate of the accrued interest upon the notes indorsed and delivered by it. But assuming, as contended for by plaintiff, that it was the intention of the parties that the title to the exchanged instruments should not pass and that they merely intended that each bank should be the agent of the other in holding the securities delivered to it, then, as the note has not been collected and is unchanged in form, plaintiff, as against the defendant bank, if solvent and if its right had not been defeated because of it having enabled the defendant bank to perpetrate a fraud, would have a full, adequate and complete remedy at law in an action to recover the possession of the note or to recover damages for breach of contract, and but for the same reason would have a full, adequate and complete remedy at law to recover the possession of the note as against the superintendent of banks. Having such remedy in an action at law, a court of equity, under the facts of this case, has no jurisdiction to afford the equitable relief of specific performance or any equitable relief. For this reason this suit cannot be maintained. This is true notwithstanding that the evidence discloses that the plaintiff is not entitled to pursue its legal remedy, because by its own acts the plaintiff has enabled the defendant bank to perpetrate a fraud upon the depositors and stockholders of the defendant bank. The statute (§ 6207, Or. L.) provides that no state bank shall directly or indirectly loan to or permit any corporation to become,

at any time, indebted or liable to it in a sum exceeding 20 per cent of its paid-up capital and surplus fund. If the intention of the parties was that the title to the trade acceptance of the Petersburg Lumber Company was not to pass to plaintiff and that said acceptance was to remain the property of the defendant bank and be carried by plaintiff ostensibly as its own property, while in fact it remained the property of the defendant bank, the effect of the contract was to enable the defendant bank to make an excess loan to the Petersburg Lumber Company in violation of law and in fraud of the rights of its depositors and stockholders.

Moreover, each state bank is required by statute to make not less than five verified reports each year showing the condition of its affairs, to transmit these reports to the superintendent of banks and to publish a copy of the same in a newspaper of general circulation in the city where the bank is located. Although there is no proof to that effect, presumably these reports were made as required by statute; but whether made or not, by the very acts of the plaintiff in this transaction, the plaintiff enabled the defendant bank, if, as now contended for, the note in question is the property of the plaintiff, to hold itself out as and claim to be the absolute owner of the note in question. It thereby enabled the defendant bank not only to make an excess loan in violation of statute, but also to deceive and mislead the superintendent of banks and the depositors and stockholders of the bank as to the ownership of the note.

2. It is a maxim of the law that "where one of two innocent parties must suffer for the fraud of another, he who has enabled the fraud to be committed must be the sufferer." The rule in equity applicable

to the facts disclosed in the instant case is stated by Mr. Pomeroy as follows: ''The equity acquired by a party who has been misled is superior to the interest in the same subject matter of the one who willfully procured or suffered him to be thus misled.'' 2 Pomeroy's Equity (3 ed.), § 686.

3.   In *Fiore* v. *Ladd & Tilton,* 22 Or. 202 (29 Pac. 435), this court, in effect, held that if the owner of property negligently or intentionally gives the control of his property to another and thus places him in a position to defraud a third party in relation to the property, and a loss occurs thereby, without the fault of the third party, the loss should fall upon the owner of the property, even if he intended no wrong, rather than on the third party, because by his acts the owner facilitated the fraud.   The proper application of these principles to the facts disclosed in this case would operate to defeat any equitable relief if even this were a case over which equity had jurisdiction.

The decree of the Circuit Court denying equitable relief to the plaintiff must, therefore, be affirmed.

AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.