**SHAW, Banking Commissioner, v. KORTH.**
**No. 9901.**

Court of Civil Appeals of Texas. Galveston.

Feb. 23, 1934.

Rehearing Denied April 5, 1934.

See, also, 26 S.W.(2d) 351.

John M. Green, of Cuero, and A. J. Lewis and R. F. Spencer, both of San Antonio, for appellant.

Crain & Hartman and H. W. Wallace, all of Cuero, for appellee.

PLEASANTS, Chief Justice.

Appellant in his official capacity brought this suit to recover from appellee the principal, interest, and attorney's fee due upon a note signed by appellee, dated July 7, 1927, for the sum of $5,000. The note is payable to appellee's order ninety days after date, and indorsed by him. The petition alleges that the note is an asset of the Yoakum State Bank which plaintiff in his official capacity is liquidating for the use and benefit of the bank, its depositors, and creditors. The following sufficient summary of the pleadings is copied from appellant's brief:

"In addition to a general demurrer and general denial, appellee answered that the execution and delivery of the note was without consideration in that Welhausen and Driscoll, the executive officers and managers of the bank, approached him in 1922, representing that in order to assist the bank and numerous cattlemen whose paper was held by the bank over the financial depression then existing, they had formed a plan to organize a cattle loan company and would obtain aid from such government agencies as the Federal Intermediate Credit Bank and War Finance Corporation; that appellee was not versed in the ways of financial institutions and did not fully understand in what manner his note would be used, and that he executed his note for $5,000.00 payable to his order and endorsed by him, they assuring him that it would be without cost to him and would be returned as soon as the cattle company was organized.

"These allegations were followed by the averment that after the execution and delivery of the note under the circumstances alleged, Welhausen and Driscoll requested appellee to give a renewal thereof, stating that that cattle loan company had not been perfected as anticipated but that it soon would be and when it was the note would be cancelled and returned; and that upon these representations it was renewed and thereafter each time it was renewed these representations were repeated and always with the assurance that he owed the bank nothing.

"Appellee further averred that the Yoakum State Bank was incorporated in 1906 for a term of twenty years and that its charter expired before August, 1927; that Welhausen and Driscoll, in August 1927, obtained a State charter for The Yoakum State Bank;

that the latter took over all the assets of the former; that the new bank had the same officers as the old and operated and conducted the new bank under the new charter; that all of the officers of the new bank knew that the note was only an accommodation and that appellee was in fact never indebted to the new bank in any sum whatsoever and that the charter papers showing the capital stock paid in was a device to obtain a new charter but that no capital stock was in fact paid in and no consideration whatever passed from the new corporation for the assets of the old one.

"Appellee further pleaded, upon information and belief, that a corporation was formed, styled Bankers Finance Corporation of South Texas; that Driscoll was its President and General Manager; that its officers were in The Yoakum State Bank, of which Driscoll was also active Vice President and that he managed all the affairs of the bank and the finance company in the banking rooms and offices of the bank; that appellee never subscribed, purchased or owned stock in the finance company and that he was not liable on the note sued on notwithstanding the letters of Driscoll intimating or insinuating that the note was given for stock in the finance corporation.

"Appellant met these allegations by general demurrer, general denial and a plea of estoppel which was, in substance: that appellee knew at the time he executed the original note in 1922 that it was to be and would be used for the purpose of organizing the Bankers Finance Corporation; that he knew, shortly after its execution in 1922, that it had been sold or discounted to the bank and that the latter actually paid the finance company the sum of $5,000.00 thereon and that the original note was taken into the assets of the bank, originally and as renewed from time to time; that it had been advertised in all the financial statements to the Banking Commissioner, depositors and creditors and the public generally as an asset and that appellee would be estopped to assert it was without consideration, or that it was for the accommodation of the bank, or that it was not a valid and binding obligation."

The trial in the court below without a jury resulted in a judgment for appellee, that appellant take nothing by his suit.

In conclusions of fact voluntarily filed by the trial judge he found in substance:

"That in 1922 Welhausen and Driscoll were the executive heads and real managers of the Yoakum State Bank; that although the bank's charter expired in 1926, they continued to operate it until some time in 1927 when a new charter was obtained; that no capital stock was paid in to secure the new charter, the only consideration paid by the new bank for the assets of the old being the assumption of the liabilities of the old; and that the personnel and management of the new bank and the books kept by it were the same as the old and that the management, from the date of the original note given by appellee in 1922 to the date the bank was taken over by the Banking Commissioner in September, 1928, was at all times the same.

"That Korth executed the original note and mailed it to the Yoakum State Bank at the request of Welhausen in whom he had the utmost confidence—in fact would believe anything Welhausen told him—upon the representation by Welhausen that it was to be held by the bank temporarily for the purpose of accommodating the bank until its plans were completed; that when the note fell due Driscoll requested appellee to renew it, and thereafter, each time it was renewed at the request of Welhausen and Driscoll, it was with the assurance that it was given for the accommodation of the bank and that as soon as arrangements were completed the note would be cancelled and returned.

"The court further found that the Bankers Finance Corporation, incorporated by Welhausen, Driscoll and Paulus, and conducted, managed and operated by the two first named, was a device formed and used by the bank as a plan or machine to relieve it of some of its loans and credits; and that Korth never subscribed for or owned any stock in the finance corporation or had any interest therein except of being relieved and getting his note back in accordance with the promises and agreements made by Welhausen to him.

"That Korth received no consideration whatever for the note; that he paid no interest thereon; that the note was delivered to the bank about the time of its execution but was not run into the books of the bank until April 1922 (the exact date is April 18, 1922); and that about the date the original note was given, the Bankers Finance Corporation received a credit with the bank of $55,000.00 (of which the Korth note of $5,000 was a part), but it was not actually run into the account of the bank until April 1922 (the exact date being April 18, 1922)."

These fact findings are amply sustained by the evidence.

■ Upon these facts the trial court could not properly have rendered any other judg-

ment than one denying appellant recovery upon the note, appellee having received no consideration for the note, and its execution and delivery, as well as its various subsequent renewals having been solely for the bank's accommodation, it goes without saying that the bank could not require its payment by appellee. If the bank, as contended by appellant, placed money in its bank to the credit of Bankers Finance Corporation on the security of this note, it did so under its agreement with appellee that it desired this note from him to assist it to organize such corporation in order to enable the bank to relieve itself of some of the cattle loans which, because of the then depression in the price of cattle, it was unable then to collect without loss, and that as soon as this result was accomplished it would return the note to him. The nonliability of appellee on the note was at all times recognized by the bank and upon each renewal the bank, by its managing officers, renewed its promise to return the note as soon as it had accomplished the purpose for which it was solicited and obtained by it through its then active vice president, Mr. Welhausen, who was subsequently made president and Mr. Driscoll given the position of active vice president.

The recognition of the accommodation character of the note was at all times continued and repeated by each of these officials. The appellant states in his brief:

"The court was correct in his finding that Welhausen and Driscoll were at all times the active managers of the bank. His further finding that the affairs of the Bankers Finance Corporation were conducted, managed and operated by Welhausen and Driscoll is unchallenged. It is without dispute in the record that they were the actual and active organizers of the Bankers Finance Corporation."

There is no evidence contradicting the testimony of appellee that Welhausen was acting for the bank in obtaining the execution of the note and the repeated statement of Welhausen that he was so acting. Such being the state of the evidence, it must be held that he was so acting. Central Bank & Trust Co. v. Ford (Tex. Civ. App.) 152 S. W. 700. Such being the character of the note sued on, the banking commissioner, who is liquidating the bank for the benefit of its depositors and creditors, cannot recover, nor can appellee be held estopped from asserting his nonliability on the note. We agree with the trial court that no estoppel is shown by the evidence. There is no evidence that this note was ever included in any statement to the banking commissioner or examiner or in any advertisements of the condition of the bank which are required to be made by our statutes. We think the facts of this case distinguish it from the case of Shaw v. Borchers (Tex. Com. App.) 46 S.W.(2d) 967, 970. In the cited case the court expresses its holding that Borchers was liable on his accommodation note to the bank in the following language:

"We desire to make clear the effect of our holding. When any person executes a note, in connivance with the officers of a state bank, for the purpose of deceiving the bank examiner, he will not be permitted, in a suit by the bank's receiver, to urge that his obligation is other than what it purports to be upon its face."

This holding is supported by the rule stated in Vol. 2, Moss on Banks & Banking, p. 1597, as follows:

"If one gives a note to a bank for the purpose of deceiving the Comptroller as to the amount of reserve, one is liable on such note when the bank goes into the hands of a receiver; but if one bona fide gives an accommodation note to the bank one is not liable thereon to the receiver."

There is no evidence in this case showing or tending to show that the note given the bank was executed to the bank in connivance with its officers for the purpose of deceiving the bank examiner, or for that matter, that any bank examiner ever saw the note prior to the failure of the bank.

We have fully considered all of appellant's propositions and none of them can, in our opinion, be sustained. No error in any of the proceedings is pointed out which requires or would authorize a reversal of the judgment.

It follows from these conclusions that the judgment must be affirmed, and it has been so ordered.

Affirmed.