E. C. BRAND, BANKING COMMISSIONER, v. ROBERT P. KORTH.

No. 6773.   Decided December 9, 1936.
Rehearing overruled January 13, 1937.
(99 S. W., 2d Series, 285.)

*John M. Green,* of Cuero, *A. J. Lewis* and *R. F. Spencer,* both of San Antonio, for plaintiff in error.

When a person executes and delivers a note at the request of one whom he knows will place it in and carry it as an asset of a bank and with the knowledge that it is being carried by such bank as an asset renews it eleven times over a period of years will be estopped, in a suit by the bank's receiver to collect it, to urge that the obligation is other than it purports to be upon its face. Dowland v. Staley, 201 Ill. App., 6; Ford v. Ford, 27 App. D. C., 401, 6 L. R. A. (N. S.), 442; Stover v. Hellyer, 68 N. J. Eq., 446, 59 Atl., 470; Russell v. Scofield, 134 Wis., 21, 113 N. W., 1094.

*Crain & Hartman* and *H. W. Wallace,* all of Cuero, for defendant in error.

The note given to the bank was one for accommodation and without any consideration. State Banking Board v. James, 264 S. W., 145; 6 Tex. Jur., 723; Western Shoe Co. v. Amarillo State Bank, 42 S. W. (2d) 469; Kirby v. Blake, 115 S. W., 674.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted by James Shaw, Banking Commis-

sioner of the State of Texas, in his capacity as statutory liquidating agent of the Yoakum State Bank, for the use and benefit of the depositors and creditors of said bank. E. C. Brand later succeeded Shaw as Banking Commissioner and is substituted plaintiff. The suit was against Robert P. Korth to recover upon a note for $5000.00, executed by Korth July 7, 1927, payable to himself and indorsed by him. The note in question was in renewal of one originally executed April 18, 1922, there having been in all some ten renewals. The parties will be designated as in the trial court. Judgment of the district court in favor of defendant was affirmed by the Court of Civil Appeals. 71 S. W. (2d) 332.

Although the note in question was found among the assets of the insolvent bank at the time it was taken over by the Banking Commissioner for liquidation, and on its face was apparently a legal obligation of the maker, nevertheless defendant sought to defeat a recovery on the ground that it was purely an accommodation note, executed by him without consideration, and was solely for the purpose of lending his credit to the bank while in a condition of financial distress. The trial court filed the following finding or conclusion:

"I conclude that the defendant is an accommodation party who signed his name to the note in suit as maker thereof and as indorser thereof without receiving value therefor and for the purpose of lending his name to Yoakum State Bank for its accommodation and that the note in suit is the accommodation note so issued by the defendant."

Without going into a discussion of the question of defendant having executed the note in consideration of becoming a stockholder in the "Bankers Finance Corporation of South Texas," as appears to have been held by the Court of Civil Appeals on a former appeal (26 S. W. (2d) 351), we shall dispose of the case upon the theory that the note was an accommodation note, as found by the trial court.

■ According to defendant's own allegations and testimony, as well as the findings of the trial court, at the time defendant executed the original note in 1922, the Yoakum State Bank held a large amount of promissory notes executed by cattlemen, and on account of the general slump in prices and the depression in the cattle market, the financial condition of the makers of said notes was very "serious and depressing." This resulted in a condition of financial stringency on the part of the bank itself, which led its officers to seek aid from defendant

and others, and the note in question was executed by defendant "with the purpose and intention of aiding and accommodating said Yoakum State Bank;" and with the understanding that "such note should be placed in said bank for its temporary accommodation." It is undisputed that the note passed into the bank and became a part of its apparent assets about April, 1922. It was renewed several times, the last renewal being on July 7, 1927. During this period of more than five years it remained with the bank as an apparent asset. It is admitted by defendant that one of the surrendered notes bore indorsements showing that it had been assigned to The Hanover National Bank of the City of New York. This was the renewed note of date January 15, 1925, which note was offered in evidence.

The Yoakum State Bank went into liquidation September 5, 1928. The plaintiff pleaded estoppel on the ground that defendant had allowed said note to remain in the hands of the bank over a period of more than five years as an apparent asset, being included in the financial statements of said bank, and having been acted upon by depositors and creditors. Even conceding that the note was purely an accommodation note, without consideration to defendant, we are of the opinion that defendant, as against the Banking Commissioner in his capacity as representative of the depositors and creditors of the insolvent bank, was estopped to deny the legal obligation thereof. This question was in principle decided by the Commission of Appeals in the case of Shaw v. Borchers, 46 S. W. (2d) 967. In that case Borchers had executed a note to the Yoakum State Bank under exactly the same conditions as the note here in question was executed. The only difference between that case and the present case that can be suggested is that Borchers renewed his note after being advised that the bank examiner would require its withdrawal if he understood that it was not a real asset of the bank, and therefore Borchers had "acquiesced in the bank officials' scheme to carry his note as an apparent enforceable asset of said bank," while in the present case it is claimed that there was no agreement on the part of defendant with the bank officials which was calculated to mislead or deceive the examiner. We are unable to see why an agreement on the part of the maker of a note and the bank's officials to mislead or deceive the banking commissioner is at all necessary to create an estoppel, when the mere placing of the note with the bank and allowing it to remain there as an apparent asset necessarily has the same effect without an agree-

ment as with one, so far as the bank examiner and creditors and depositors are concerned.

■ In the case of First National Bank of Tulsa v. Boxley, 129 Okla., 159, 264 Pac., 184, 64 A. L. R., 588, the court used language which expresses what we regard as the correct rule. In that case the court said:

"The public is greatly interested in the management, control, and regulation of the banking business. Banks are permitted to do business through the courtesy and permission of law and subject to its provisions for the protection of the depositors, creditors, and stockholders. Public faith and credit and honesty in business transactions are the main assets of a bank. To sanction any arrangement whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction the object of which is to give to the assets of a bank a favorable appearance for the purposes of examination, but less favorable for the purposes of liability or enforcement. The defendant having signed said note, and it being a part of the bank's assets, an understanding or agreement of nonliability would be neither proper nor tenable. It would amount to a fraud upon the depositors, stockholders, and the public to permit an agreement that the obligation which the defendant assumed was in fact not an obligation. We must conclude that under defendant's allegations the note sued on became a part of the assets of the bank and the allegations of the agreement just considered did not constitute a defense to the plaintiff's cause of action."

In the case of West Rutland Trust Company v. Houston, 104 Vt., 204, 158 Atl., 69, 80 A. L. R., 664, the same rule was announced by the court in the following language:

"Transactions with banks are affected with an unusual public interest. It is of public importance that all dealings with banks be conducted with integrity and honesty. That the public interests may be protected, they are subjected to oversight and inspection by the commissioner of banking and insurance. If, as the defendants contend, the note was given to the plaintiff merely as a semblance of collateral security for the indebtedness of the Buck Lumber Company, the result of such undertaking was to effect a scheme to deceive the bank examiner. If so, it was an illegal transaction, and it is against public

policy to permit the defendants to rely upon such an illegality as a defense.

"In such circumstances, the defendants are bound as the face of the note discloses. (Citing authorities). The application of this rule is especially apposite when, as here, the rights of third parties have intervened by the subsequent insolvency of the bank."

Article 358 of the Revised Statutes of 1925, which appears to have been enacted as early as 1923, provided that the Banking Commissioner should cause each state bank to be thoroughly and fully examined at least every six months. It will be assumed that this was done. Article 493 required the books and records to be open for inspection by all interested persons. Article 494 provided for a statement of the financial condition of banks to be made at the call of the Commissioner. Article 496 provided for publication of such statements. The case of Heath v. Turner, 256 Ky., 715, 77 S. W. (2d) 9, by the Court of Civil Appeals of Kentucky, is almost directly in point. In that case, in order to apparently maintain the capital stock of the bank unimpaired, defendant executed his note to the bank, with the understanding that he would not be required to pay same, but that it was purely an accommodation note. It was held that this agreement could not constitute a defense to the note in the hands of a receiver, the court among other things saying:

"The Legislature, in the exercise of the police power of the state, has, in an attempt to safeguard the solvency of banks organized under the state banking laws, enacted regulatory measures, included in which is the requirement that the bank submit to periodical examination into the condition of its affairs by representatives of the state banking department, and that its officers make periodical statements under oath setting forth in detail its assets and liabilities that the public as well as the banking department may be kept informed as to the condition of such banks. It is required that these sworn statements be published in a newspaper of general circulation in the community in which the reporting bank is engaged in business. Because of the notes executed by Heath and other officers and directors, the bank was permitted to continue business for nearly 3 years and by published reports to hold itself out to the public as solvent. Regardless of the equities between the other stockholders of the bank and the makers of the notes, and the effect of the agreement as between them, a matter which it is unnecessary for us to determine, the agreement

could not and did not operate to thwart and nullify the policy of the law to the prejudice of the creditors and depositors. They were entitled to have the capital stock remain unimpaired, and it was to this end that the notes were executed. The fact that the banking commissioner may have approved the notes with knowledge of the alleged agreement as to the condition upon which they were executed did not lend any effect to the agreement so far as the interests of the creditors and depositors are concerned. It therefore follows that the alleged agreement is unavailable as a defense in an action of this character."

Defendants having placed this note in the possession of the bank and having permitted it to retain same for more than five years with all the indicia of rights of full ownership, during which time creditors and depositors dealt with the bank on the faith of its solvency, he is estopped to deny liability as against the Banking Commissioner in his capacity as representative of the depositors and creditors. But for the presence of this note as an apparent asset of the bank it might have been placed in liquidation long before it was actually declared insolvent. In this instance we have, furthermore, conclusive proof that third parties extended credit to the bank in reliance on the note. It is undisputed that at one time this note was assigned to The Hanover National Bank of New York. Defendant knew this and protested. Nevertheless he allowed it to remain with the bank more than two years thereafter. If he had desired to protect himself he could then probably have taken action successfully to obtain the note or to avoid its obligation.

In addition to the authorities cited in the Borchers case and those above referred to, we cite the following: Golden v. Cervenka, 278 Ill., 409, 116 N. E., 273; Richards v. Charlot, 122 La., 492, 47 So., 841; Astoria National Bank v. Bank of Portland, 109 Or., 699, 222 Pac., 588; German-American Finance Corporation v. Merchants & Mfg. State Bank, 177 Minn., 529, 225 N. W., 891, 64 A. L. R., 582; Schwenker v. Teasdale, 206 Wis., 275, 239 N. W., 434. See also authorities cited in Annotation in 64 A. L. R., pages 601 to 605.

The judgments of the trial court and of the Court of Civil Appeals are reversed and judgment is here rendered in favor of the plaintiff in error.

Opinion adopted by the Supreme Court December 9, 1936.

Rehearing overruled January 13, 1937.