## SHAW, Banking Com'r v. BORCHERS.
### No. 1323–5838.

Commission of Appeals of Texas, Section B.
Feb. 24, 1932.

Spencer, Rogers & Lewis, of San Antonio, for plaintiff in error.

J. W. Ragsdale, of Victoria, for defendant in error.

LEDDY, J.

Plaintiff in error, as the statutory receiver for the Yoakum State Bank, sought judgment against the defendant in error as the maker of a note payable to said bank, in the sum of $5,000.

The defendant pleaded in defense of such action that the note sued upon was in renewal of a note executed by him in consideration of the issuance of certain stock in the

Bankers' Finance Corporation of South Texas; that said note was not to be an enforceable obligation against him until the stock in said corporation had been issued and delivered to him, which was never done. With reference to the execution of the renewal note sued upon, defendant in error's answer contained the following averments:

"That this defendant, after ascertaining as aforesaid, that no stock would be issued to him in the Bankers Finance Corporation of South Texas, and which said stock was to be issued to him as a condition precedent before said note should become a demand against him by said Yoakum State Bank, requested the said The Yoakum State Bank to deliver said note to him. That officers and directors of said The Yoakum State Bank made known to this defendant that said bank was being constantly required to charge off notes by the Banking Commissioner, which notes were past due, and to put up more money in order to keep said bank a going institution. That the note held by said bank was listed as an apparent asset of said bank, and that to return it to defendant at that time would require said The Yoakum State Bank to raise Five Thousand ($5,000.00) Dollars in cash and credit same to its account of the withdrawal of said note. And that it would be a great accommodation to said The Yoakum State Bank for defendant to renew said note to its maturity date and deliver said note to said The Yoakum State Bank, with the express agreement and understanding with said bank that said note was not and would not become an obligation of defendant to said The Yoakum State Bank, nor would it be used by said bank, but that at maturity it would be cancelled and delivered by said bank, to this defendant, unless, of course, said Bankers Finance Corporation stock could be and would be delivered to defendant, in which event said note would become a valid demand against defendant. That said Bankers Finance Corporation of South Texas has never issued and delivered such stock to this defendant."

The case was tried before the court without the intervention of a jury. Judgment was rendered denying plaintiff in error the recovery sought.

The circumstances under which defendant in error's original note was renewed were found by the trial court to be as follows: "I find that at and prior to the time the note sued on was delivered to The Yoakum State Bank, that said bank was being frequently examined by plaintiff through his staff of bank examiners and past due notes were required by plaintiff to be charged off; and The Yoakum State Bank was required to put up some Four Hundred Fifteen Thousand and no/100 ($415,000.00) Dollars in cash to comply with plaintiff's demand. In this connection, I find that at about this time the defendant made a demand of The Yoakum State

Bank that it surrender to him the note he had executed and delivered to Yoakum State Bank, which was not to become a demand in favor of said bank until contingencies hereinabove set out had happened. That, at that time, said The Yoakum State Bank, acting through its active vice-president, M. C. Driscoll, told defendant of its difficulties with this plaintiff in having to charge off past due paper and put new money in said bank, etc., in lieu thereof, and requested the defendant, as an accommodation to said bank, to renew the note theretofore given Yoakum State Bank, as hereinabove found by me; and said Driscoll, active vice-President of said bank, and B. H. Treybig, cashier and director of said The Yoakum State Bank, agreed with defendant that if he, defendant, would renew said note in the sum of Five Thousand and no/100 ($5,000.00) Dollars to its present maturity date, that The Yoakum State Bank would hold said note, would not use it, nor would same become a demand in its favor against defendant unless said stock in said Bankers Finance Corporation was issued and delivered to defendant at or before maturity of said note, and that, upon a failure to deliver said stock, said bank would voluntarily cancel and return to defendant said note. That no such stock in said corporation was ever issued to defendant."

Upon appeal to the Court of Civil Appeals, the judgment of the trial court was affirmed, and plaintiff in error has been granted a writ of error.

The correctness of the trial court's judgment is challenged by plaintiff in error upon the ground that under defendant in error's answer, and the facts found by the trial court, he was estopped from maintaining the defense that the renewal note sued upon was a mere accommodation one and not an enforceable obligation against him.

Defendant in error insists that his note was executed in consideration of the issuance of stock in the Bankers' Finance Corporation of South Texas; that such stock was not in fact issued, and therefore his note never became an asset of said bank. He further contends that, as the undisputed evidence showed his note was a pure accommodation, which the bank could not have enforced against him if it had remained solvent, the banking commissioner, as statutory receiver, could occupy no better position in an action to recover upon the note than the bank itself.

It is true the general rule is that the receiver of an insolvent corporation has no greater rights than those possessed by the corporation itself. There is, however, a well-defined exception to such rule. A receiver of such a corporation acts in a dual capacity. He is a trustee both for the stockholders and the creditors. As trustee for the creditors, he is permitted to maintain and defend actions involving acts done in fraud of credi-

tors, even though the corporation would not be permitted to do so. Franklin Nat. Bank v. Whitehead, 149 Ind. 560, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. Rep. 302; Graham Button Co. v. Spielmann, 50 N. J. Eq. 120, 24 A. 571; Farmers' Loan & Trust Co. v. Minneapolis Eng. & Mach. Works, 35 Minn. 543, 29 N. W. 349; Keedy v. Sterling Electric Appliance Co., 13 Del. Ch. 66, 115 A. 359; Stone v. Young, 210 App. Div. 303, 206 N. Y. S. 95; Thompson on Corporations (5th Ed.) §§ 6945, 6946, and 6952.

■ Defendant in error admits in his answer that the officers and directors of The Yoakum State Bank made known to him that said bank was being required by the commissioner of banking of this state to charge off past-due paper and to substitute cash therefor. He was informed that his past-due note was listed as an apparent asset of the bank, and, if it was returned to him, the commissioner of banking would require the officials of said bank to raise $5,000 in cash and credit same to the bank's account. It is clear from this admission that defendant in error acquiesced in the bank officials' scheme to carry his note as an apparent enforceable asset of said bank by renewing it in obedience to the request of such officials when he knew that it could not be enforced by the bank as an obligation against him. His own plea avers that he executed this renewal note after he ascertained that no stock would be issued to him in the Bankers' Finance Corporation of South Texas. He was thus put upon notice that the only purpose which would be subserved by his permitting the note to remain as an apparent asset of the bank was to mislead and deceive the banking department. He knew such department was charged by law with the duty of safeguarding and protecting the interests of the public who might have dealings with said bank. His note showed upon its face to be a valid and enforceable demand against him. He is bound to have known that the same would be so considered by the banking department in its supervision of the affairs of the bank. His action in agreeing for such note to be carried as an apparent asset of the bank prevented the banking commissioner from requiring $5,000 in cash to be placed as an asset of said bank in lieu of this worthless paper.

Now, when insolvency has supervened, if defendant in error is permitted to show that his note was not what it purported to be, but was mere accommodation paper, the creditors of this bank will receive $5,000 less than they would have received if his paper had been what he, by his conduct, represented it to be. Under such circumstances, fairness and justice demand that defendant in error should be estopped from availing himself of the defense that the renewal note, which he led

the banking department to believe to be a real asset of the bank, is but a mere scrap of paper.

A similar defense to that here urged was denied in the case of Lyons v. Benney, 230 Pa. 117, 79 A. 250, 251, 34 L. R. A. (N. S.) 105. The defendant set up the defense that he executed his note to the bank so that it might charge off a certain note which had been objected to by the bank examiner and which could no longer be carried in the bank's assets. He pleaded that it was understood and agreed between him and the bank at the time that he was executing the note to accommodate the bank that he was not to be liable on same. The court, however, held him bound by his obligation, and in discussing the question said: "The substance of this affidavit of defense is that the appellant made and delivered his note to the bank in furtherance of a scheme to deceive the bank examiner, under a promise made to him by the bank that he would not be held liable upon the obligation. He agreed that it should appear as one of the assets of the institution, for the purpose of deceiving those whose duty it was to examine them, and he now sets up the defense that, as it was to serve no other purpose, it is to be regarded as a worthless piece of paper under this agreement with the bank. Whether the bank, if it were now carrying on business as a solvent institution, could enforce payment of the note, assuming the averments in the affidavit of defense to be true, was not the question before the court below on the rule for judgment, for the note had passed into the hands of the receiver of the insolvent bank, and as a representative, not only of it, but of its creditors, he brought the suit."

A like ruling was made by the Circuit Court of Appeals for the Southern District of California in the case of Pauly v. O'Brien, 69 F. 460, 461. In holding the accommodation maker liable in an action brought by the receiver of the bank, the court used this forceful language: "If, however, this was not really the case, but that, in truth, the transaction was a mere trick to make it appear to the government and to the creditors and stockholders of the bank that it had a valuable note when in fact it did not have one, the result must be the same, for, when parties employ legal instruments of an obligatory character for fraudulent and deceitful purposes, it is sound reason, as well as pure justice, to leave him bound who has bound himself. It will never do for the courts to hold that the officers of a bank, by the connivance of a third party, can give to it the semblance of solidity and security, and, when its insolvency is disclosed, that the third party can escape the consequences of his fraudulent act. Undoubtedly, the transaction in question originated with the officers of the bank, but to it the defendant became a willing party."

The same doctrine was declared by the Court of Appeals of Colorado in Murphy v. Gumaer, 18 Colo. App. 183, 70 P. 800. It was there determined that notes given for the accommodation of a bank and for the purpose of concealing from the bank examiner the fact that the bank had loaned money beyond the amount permissible by statute were held valid in the hands of the receiver of the bank. The court decided that the maker of such notes by giving the bank the appearance of holding genuine assets was estopped against creditors from urging the defense that such notes were not what they appeared to be on their face.

The Supreme Court of Florida reached a similar conclusion in the case of Ashley v. Rowe, 133 So. 551, 552. In that case the plaintiff sought to recover the possession of certain bonds which she claimed to have loaned the bank for use as collateral to secure a deposit with the express understanding that the same would at all times be and remain as her property. It was determined, however, that, having connived with and made it possible for the bank to hold out to the state authorities and to the public that such bonds constituted a part of the general assets of the bank, she should be estopped to claim ownership of the bonds, and that she must take only as an ordinary creditor. In passing on this question, the court made this observation: "It would be unconscionable for one to loan money or bonds to a bank with the understanding and agreement that such money or bonds would be used by, and held out to the public as constituting a part of the assets of, the bank, and then, when the bank should have become insolvent, maintain a claim that no property in the money or bonds ever passed to the bank, and that the same was at all times held as the property of the claimant in trust to be returned in kind to the claimant."

We think the principle announced in these decisions is a salutary one. To hold otherwise would substantially impair the efficiency of the supervision of state banks by the banking department. The examinations by this department will be of little value in protecting the interests of depositors in state banks, unless it is held that the notes executed to such banks and which are carried as a part of their assets are what they purport to be upon their face.

If an apparently valid asset placed in this bank under the circumstances shown by this record must be held to be worthless, then it necessarily follows that the officers of such bank could have made similar deals with nu- merous other persons which would have resulted in a substantial amount of the assets of this bank being worthless paper. We are unwilling to sanction a practice leading to any such results.

■ We desire to make clear the effect of our holding. When any person executes a note, in connivance with the officers of a state bank, for the purpose of deceiving the bank examiner, he will not be permitted, in a suit by the bank's receiver, to urge that his obligation is other than what it purports to be upon its face.

■ It is urged that plaintiff in error is not in position to assert an estoppel against defendant in error because it did not specially plead such issue. It is ordinarily the rule that a party cannot claim the benefit of an estoppel without specially pleading the same. But the rule is otherwise if the matter constituting an estoppel is apparent upon the face of the pleadings. Scott v. Luther, 44 Iowa, 570; Oregonian Ry. Co. v. Oregon Ry. & Nav. Co. (C. C.) 22 F. 245, 10 Sawy. 464; Crawford v. Nolan, 70 Iowa, 97, 30 N. W. 32; C. J. Vol. 21, p. 1245, Sec. 254.

In the first-cited case, the Supreme Court of Iowa, in answering a contention that a plaintiff could not avail himself of the issue of estoppel without pleading the same, said: "The ready answer to this position is that the defendant had already, by his answer, set out all the facts showing that he should be estopped, and it was not necessary for the plaintiff, in a reply, to reiterate them, or to plead a legal conclusion based upon the facts set out in the answer. It is said, in argument, that there was no evidence tending to prove that defendant had procured a decision of the Cherokee Circuit Court, declaring the Pennsylvania judgment null and void. When the defendant exhibited this fact in his answer such evidence was not necessary, and it was proper for the court to treat it as a fact."

■ Defendant in error in his answer in this case set forth all the facts essential to estop him from relying upon the defense urged; hence it was unnecessary that such facts, or the legal conclusion arising therefrom be specially set forth by plaintiff in error.

Our recommendation is that the judgments of the district court and the Court of Civil Appeals be reversed, and that judgment be here rendered in favor of plaintiff in error.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered for plaintiff in error.