SHAW, Banking Com'r, v. DYER et al.

No. 9127.

Court of Civil Appeals of Texas. San
Antonio.

June 21, 1933.

Rehearing Denied July 27, 1933.

W. B. Moss, of Sinton, and Gaines, Gaines
& Roberts, of San Antonio, for appellant.

J. C. Russell, of Sinton, and M. A. Childers,
of San Antonio, for appellees.

FLY, Chief Justice.

Appellant sued Pearl Emma Dyer and her
husband, T. O. Dyer, to recover on three
promissory notes in the sum of $500 each,
due, respectively, on December 1 of 1930,
1931, and 1932. The notes were executed by
appellees to Carl Boscamp as part of the
purchase money of lots 53, 60, and 70, in the
Hazen addition to the town of Sinton, San
Patricio county, Tex.; a vendor's lien being
reserved in the deed from Boscamp to the
Dyers to secure the three notes evidencing
the purchase money for the lots. The notes
had been transferred by Boscamp to the
State Bank of Odem, Tex., which is in the
hands of appellant in a state of liquidation.
The foregoing facts were alleged by appel-
lant. Those facts were denied by appellees,
and a plea of non est factum was entered as
to the notes and the vendor's lien. They al-
so claimed that the lots constituted their
homestead.

The cause was submitted to a jury on
special issues, and on the answers returned
thereto judgment was rendered that appel-
lant take nothing by his suit and pay all costs
of suit. In response to the issues submitted
to them, the jury found that appellees did
not receive a valuable consideration for exe-
cuting the notes forming the basis of the
suit; that the Bank of Odem was not a pur-
chaser in good faith of the notes for a valu-
able consideration; that one J. D. Holland
was acting as the agent of the bank in pro-
curing the execution of the notes; that as
an inducement to the execution of the notes
Holland represented to appellees that the
notes would be valueless and would not be
sued upon by the bank; that such represen-
tations were the sole consideration for the
execution of the notes. It was represented
by Holland, as agent for the bank, that the
execution and delivery of the notes would
add to the showing of the bank's assets, and
they were executed to Boscamp to indicate
that they were given for purchase money of
the land theretofore bought by appellees from
Boscamp. They were not really given for
any part of the purchase money of the land.

Boscamp sold the land to appellees for $7,-
000, and recited in the deed that $7,000 in
cash had been paid, and six notes, each for
$500, had been given for a part of the pur-
chase money. The three notes sued on here-
in were part of the six notes described in the
deed. After the execution of the deed and
notes, appellees sold a portion of the land to
J. E. Dodson; at that time the six notes had
been transferred by Boscamp to the bank;
and, when the land was sold to Dodson, the
release of the debt on the land, as evidenced
by three of the notes, was executed and de-
livered by the bank. The release recited that
the six notes were given for the purchase
money on the land, and that three of them
would be paid by the money from the sale to
Dodson. The release showed that three more
notes were being held by the bank.

The theory of the case held by appellant,
which is sustained by ample testimony, is, T.
O. Dyer owed the bank $3,000, which was
past due, and, hearing of the land purchase
about to be made by appellees, Holland was
sent by the bank to appellees to give some
security for the $3,000 note then due, and he
proposed to the parties that, while the trans-
action was for cash, appellees agree that six
notes be given to Boscamp, who agreed to in-
clude the notes in the deed as unpaid pur-
chase money, and Boscamp would transfer
the notes to the bank. By this transaction
appellees substituted the six notes for the
$3,000 note, and were given six years in
which to pay off the notes. The six notes
were described in the deed given by Boscamp
to appellees, and the notes were transferred
to the bank. Afterwards the appellees sold

part of the land and used the amount realized therefrom to pay off three of the six notes described in the deed, accepting from the bank a release of the vendor's lien on that part of the land sold by appellees, and such release was recorded by appellees. The six notes were executed to pay a note for $3,000 due by appellees to the bank.

While it is clear that no such promises were made by the bank to appellees as claimed by them, still, if such statements were true, the acts of appellees in connection with the notes forever estop them from setting up the defense attempted, and which was successful before a jury.

The verdict and judgment have neither law, justice, nor equity to sustain them, and the judgment is reversed and the cause remanded.

### On Motion for Rehearing.

It was alleged and proved by appellee that J. D. Holland, agent of the Odem State Bank, had an agreement by which the notes given to Boscamp were to be transferred to the bank, and that the bank would not attempt a collection of the said notes, but they would be there for the purpose of giving a better appearance to the account of appellee.

In other words, it was alleged and proved that the agent of the bank and appellee entered into an agreement by which they would deceive the bank examiner and perpetrate an injustice upon him and the public generally.

Under the authority of the Supreme Court, which is supported by reason and justice, appellee should not be permitted to reap any reward from this agreement to defraud, and it would not matter that a homestead was involved in the scheme. Mrs. Dyer signed the note with her husband, and did it with full knowledge of the conspiracy to deceive the bank examiner. Neither she nor her husband should be permitted to profit by it.

In support of this position we quote from the case of Shaw v. Borchers (Tex. Com. App.) 46 S.W.(2d) 967, 970, as follows: "We desire to make clear the effect of our holding. When any person executes a note, in connivance with the officers of a state bank, for the purpose of deceiving the bank examiner, he will not be permitted, in a suit by the bank's receiver, to urge that his obligation is other than what it purports to be upon its face."

This holding of the Supreme Court is comprehensive enough to extend to the agreement made by appellee in this case. It was a part of his defense, and it is openly admitted by him in his brief, as follows: "Knowing that there was no chance to get a valid lien on the homestead, he undertook to work out a plan that would at least make it look better on the books of the bank. The interest of his principal would at least be served to the extent that when the bank examiner came around the next time apparently the Dyer line would be in better shape."

The motion for rehearing will be overruled.