## FARMERS STATE BANK IN MERKEL v. LARGENT.

### No. 1928.

Court of Civil Appeals of Texas. Eastland.

Oct. 6, 1939.

Rehearing Denied Nov. 3, 1939.

Kirby, King & Overshiner, of Abilene, for appellant.

Scarborough & Ely, of Abilene, for appellee.

LESLIE, Chief Justice.

The Farmers State Bank in Merkel instituted this suit against Tom Largent and R. I. Grimes on two promissory notes. The first was executed by Largent only and was alleged to be a renewal of the second note. Judgment was sought on the second note in the event it was disclosed that Largent was not bound on the first.

Grimes defaulted, a judgment was taken against him, and he does not appeal.

Largent answered by general demurrer, special exceptions, and by special plea the substance of which will be hereafter set out. Plaintiff, by supplemental petition, excepted to the special defense. The exception was overruled and the facts involved in the execution of the original note and each of its renewals were fully developed.

In a trial before the court without a jury, judgment was rendered in favor of the plaintiff against R. I. Grimes, but recovery was denied as against Largent. To this portion of the judgment the plaintiff excepted and prosecutes appeal. Plaintiff requested findings of fact and conclusions of law, which are embraced in the transcript.

Largent's special defense is in substance that the notes sued on were given by him in renewal and extension of a note originally executed by Emmett Grimes, et al., to plaintiff's predecessor, Farmers State Bank *of* Merkel, for money procured by said Emmett Grimes for his own benefit; that after Emmett Grimes executed the note originally to said Bank *of* Merkel, the bank examiner disapproved the credit statement of E. T. Grimes, and demanded that his note be collected, secured by collateral or additional indorsements, or charged out of the assets of the bank. That the maker was not able to pay it and the bank was not able to charge it out. That for the purpose of enabling the bank to carry the note as an apparent real asset of the bank, thus satisfying the bank examiner, the president or executive officers of the old bank requested the defendant Largent to sign the note with the express understanding and agreement that he would not be called upon to pay the same and that it was merely for the benefit and accommodation of the old bank, Farmers State Bank *of* Merkel; that at such time W. L. Diltz, the vice president of the old bank, also informed this defendant that the bank was not then in a position to charge off the note; that Emmett Grimes was not in a position to pay the same, but that as soon as the bank could make arrangements to eliminate the note from the assets of the bank, either by Emmett Grimes paying same or by the bank's charging it out of the assets of the bank, such would be done. That upon such understanding he signed the note as accommodation to the bank, without obtaining any of the money procured upon it originally by Emmett Grimes. That he received no benefits from either the bank or Emmett Grimes, and signed the note or the renewals thereof strictly as an accommodation to the bank and to give the asset the appearance of having a real value in view of an impending bank examination. That at no time did E. T. Grimes ever request the defendant to sign said note or any renewal thereof.

That subsequently and while the note was still held by the old bank, Emmett Grimes went into bankruptcy and thereafter failed to sign any renewal of the note, but that the defendant proceeded to renew the same from time to time over a considerable length of time, but always upon the same specific understanding and agreement with the bank as that above set out, and each time for the sole accommodation of the bank, and with the assurances that so soon as the bank was financially able to do so, the note would be charged out of the assets of the bank.

That in the meantime the old bank, Farmers State Bank *of* Merkel, became in-

solvent, and its assets (among them the obligation in suit as then evidenced) passed into the hands of the state banking authorities, and James Shaw, the Banking Commissioner of Texas, sold the assets of the old bank (except stockholders' liability) to the plaintiff bank, Farmers State Bank *in* Merkel.

The trial court's findings of fact and conclusions of law, upon sufficient testimony, confirm in substance the alleged special defense above set out and attention will be directed to pertinent portions of such findings:

"6. The court finds that Mr. Diltz at the time he procured Largent's signature told Largent the bank was not in position to charge out the paper and that the banking department was demanding that the paper either be paid, secured or charged out of the assets of the bank.

"7. The court finds that from time to time thereafter the note was renewed; that at each and every time it was renewed the signature of Tom Largent was obtained by the bank at the request of the bank and for its benefit.

\* \* \*

"9. The court finds as a fact that the original note and each and every renewal thereafter signed by Tom Largent was signed at the request of the plaintiff bank and its successor and as an accommodation to the bank.

"10. The court finds that the plaintiff bank, Farmers State Bank *in* Merkel took over the assets of Farmers State Bank *of* Merkel and proceeded to do business at the same place and with practically the same officers and directors and assumed all the obligations of Farmers State Bank of Merkel."

These findings and the undisputed testimony clearly demonstrate that the arrangements between the old bank and Largent whereby those banking officials first procured the signature of Tom Largent on said note, and each and all of the renewals thereof, contemplated that such note would appear as a valuable asset of the bank for the purpose of deceiving those whose duty it was to examine and appraise such assets in the interest of sound banking. Aside from such purpose the note or renewals so executed by Largent were but worthless scraps of paper. Stated differently, whenever said Largent executed said note, or any renewal thereof, the act was an accommodation solely to the payee upon its request and with an understanding which meant nothing more nor less than that the transaction was to give the assets of the bank a favorable appearance for the purposes of examination, but less favorable for the purpose of liability and enforcement. Notwithstanding the agreement and accommodation nature of the note, all parties connected therewith intended it to be carried as an asset of the bank. It was so carried and presumptively approved numerous times as such by the banking authorities. Undoubtedly the transaction in question originated with the officers of the bank but defendant became a willing party thereto. As said in Lyons v. Benney, 230 Pa. 117, 79 A. 250, 251, 34 L.R.A.,N.S., 105: "The only inference to be drawn from his affidavit of defense. is that, in executing and delivering his note to the bank, he helped along a trick to make it appear to the bank examiner and, for that matter, to the creditors of the bank that it had a valuable note, when, in fact, it had not."

Such, we think, is the conclusive effect of the findings and undisputed facts detailed. As said in Brand v. Korth, 128 Tex. 488, 99 S.W.2d 285, 286: "We are unable to see why an agreement on the part of the maker of a note and the bank's officials to mislead or deceive the Banking Commissioner is at all necessary to create an estoppel, when the mere placing of the note with the bank and allowing it to remain there as an apparent asset necessarily has the same effect without an agreement as with one, so far as the bank examiner and creditors and depositors are concerned."

■ As a general rule, notes made payable to a bank for the sole purpose of concealing the true condition of the bank and of deceiving the bank examiner are without consideration and the bank, as a going concern, cannot recover thereon. 9 C.J.S. Banks and Banking, page 801, § 385; Central Nat. Bank of Waco v. Lawson, Tex. Civ.App., 7 S.W.2d 915, affirmed, Tex.Com. App., 27 S.W.2d 125.

■ The soundness of such a rule could not well be doubted where the original payee bank as a solvent going concern demands payment of the note, a situation where it is not conceivable that the rights of the depositors, creditors, etc., may have arisen. However, that is not the case before us. The record in the instant case conclusively shows from the written agreement of the parties themselves that the old

bank, the Farmers State Bank of Merkel, was, because of insolvency, officially closed by its board of directors on February 10, 1930, and that at that time they placed the entire assets, including the note or obligation in suit, and the affairs of the bank generally, in the hands of the banking commissioner of Texas for the purpose of liquidation and discharge as provided by law. Thereafter, on April 14, 1930, James Shaw, said Banking Commissioner, who had taken charge of the assets of the old bank and was in the process of liquidating same, sold and conveyed, for a valuable consideration, the assets of the old bank, including the obligation in suit, to the present plaintiff, the Farmers State Bank *in* Merkel. According to the written agreement and transfer evidencing the sale of these assets, the commissioner sold and transferred all "such right and power [as] the commissioner has therein under the laws of Texas for the sale and disposition thereof." Full value was received and the rights and powers possessed by the commissioner were transferred to and became the property of the plaintiff bank. Hence, the undisputed facts and findings present quite a different case from that where the original payee bank is the complaining party and still a going concern. Here the resulting insolvency of the old bank definitely fixed the rights of depositors, creditors, etc., in the assets and the commissioner of banking became the trustee or representative of such rights charged with the duty of protecting and conserving same. Therefore, if the banking commissioner were the plaintiff in the instant suit, asserting such rights, his right to a judgment in their behalf could not be doubted under the authority of Brand v. Korth, 128 Tex. 488, 99 S.W.2d 285; Shaw v. Borchers, Tex. Com.App., 46 S.W.2d 967, and authorities cited in each case. See also Notes "II" Annotations under First Nat. Bank v. Boxley, 129 Okl. 159, 264 P. 184, 64 A.L.R. 588, 601.

As said in the second opinion, the Shaw v. Borchers case [46 S.W.2d 969], the banking commissioner being plaintiff: "Now, when insolvency has supervened, if defendant in error is permitted to show that his note was not what it purported to be, but was mere accommodation paper, the creditors of this bank will receive $5,000 less than they would have received if his paper had been what he, by his conduct, represented it to be. Under such circumstances, fairness and justice demand that defendant in error should be estopped from

availing himself of the defense that the renewal note, which he led the banking department to believe to be a real asset of the bank, is but a mere scrap of paper."

In the instant case, the plaintiff (new bank) having purchased from the commissioner of banking the assets of the old bank, including the obligation in suit, and having paid value therefor, thereby contributing to pay the debts of the old bank, its equitable position is the same as was that of Shaw, the banking commissioner. As said in 10 R.C.L., p. 809: "But an estoppel once having arisen inures to the benefit of those who afterwards purchase the instrument even with knowledge of the defenses." See Horn v. Nicholas, 139 Tenn. 453, 201 S.W. 756, L.R.A.1918E, 157, 160.

It follows that the appellant having acquired the right of the banking commissioner (representing depositors, creditors, etc.) for a valuable consideration, it is in position to enforce the obligation to the same extent that the banking commissioner, a statutory receiver, could have enforced it. Under the facts or grounds of estoppel detailed, the defendant cannot be heard to say the note was without consideration; and the plaintiff is entitled to a judgment. In its pleadings it raised the issue of estoppel in various ways, but the "defendant * * * in his answer in this case set forth all the facts essential to estop him from relying upon the defense urged * * *." Shaw v. Borchers, supra. See Stuart v. Mitchell, Tex.Civ.App., 241 S.W. 713, writ refused.

Not only under the above authority was plaintiff entitled under the facts to judgment, by reason of the rights derived from the banking commissioner, but there is another ground presented by the pleadings and conclusively established by the testimony which warrant the judgment for plaintiff. As noted, the plaintiff paid a valuable consideration for the assets of the old bank. That alone, as we interpret the opinion in Murchison v. Saxon et al., 128 Tex. 420, 99 S.W.2d 288, 289, entitled it to a judgment under the other facts found and undisputed. Having thus paid value the plaintiff was in position to urge estoppel based upon the facts hereinbefore detailed. Under such circumstances it was held in the last named case, as follows:

"We are of the opinion that plaintiff Murchison is unquestionably in position to

urge this estoppel. Section 29 of article 5933, Revised Statutes 1925, which is a part of the Negotiable Instrument Act, is as follows:

"'An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some, other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.'"

That part of the last sentence beginning with the word "notwithstanding" is italicized in the original opinion.

We believe that the statute quoted and the rule announced are applicable to the undoubted facts of the instant case.

The obligation in suit evidenced by various renewal notes was an asset of the new bank and the rights of the stockholders fully attached. If under any circumstances the new bank acted at times apparently under a misapprehension of its rights to enforce the note, certainly there was no consideration paid to the plaintiff upon which a contention could be based that it in any measure at any time relinquished its full and complete right and interest in the note upon which it predicates this suit.

The facts of the case have been fully developed. For the reasons assigned and upon the authorities cited, we are of the opinion that the judgment of the trial court as to R. I. Grimes should be affirmed and as to Largent should be reversed and judgment be here rendered in favor of the plaintiff against the defendant Largent; i. e., the judgment of the trial court is affirmed in part and reversed and rendered in part. It is so ordered.

FUNDERBURK, Justice (concurring in part and dissenting in part).

Without, by his pleadings, distinctly separating the defense of want of consideration from the defense of accommodation maker of the note (for payee), Largent's answer perhaps sufficiently alleges both defenses. The conclusions of fact of the trial judge sustain the defense of want of consideration, but in connection with the conclusions of law, under comparatively recent decisions do not support a judgment for said Largent upon the defense of accommodation party to the note. Considered alone, some of the conclusions of fact make plain that Largent the first time he signed the note representing the original indebtedness of Emmett Grimes involved in the note sued on, did so after the note had been fully executed and delivered by Emmett Grimes to the payee, and the consideration fully paid by the latter to Grimes. Such conclusions exclude any implication that Largent signed the note in pursuance of any promise or agreement on the part of Grimes before the execution of the note that he would sign it, as well as the existence of any separate or independent consideration for the subsequent signing of the note by Largent.

It is undoubtedly a sound proposition that after the execution and delivery of a note by one maker to the payee without any understanding or agreement that there is to be any other party to the note, and after the full consideration has passed from the payee to the maker, the subsequent voluntary signing of the note by a third party without any additional or independent consideration creates no liability of such third party as against a proper plea of want of consideration, except in favor of "a holder in due course." King v. Wise, Tex.Com. App., 282 S.W. 570; Central Nat. Bank v. Lawson, Tex.Com.App., 27 S.W.2d 125, 127; Simmang v. Farnsworth, Tex.Civ.App., 24 S.W. 541; Baker v. Wahrmund, 5 Tex. Civ.App. 268, 23 S.W. 1023; Peoples' State Bank v. Fleming Morton Co., Tex.Civ.App., 160 S.W. 648; Williams v. National Bank of Commerce, Tex.Civ.App., 62 S.W.2d 1108, 1110; Green v. American Ref. Properties, Tex.Civ.App., 22 S.W.2d 343; Good v. Martin, 95 U.S. 90, 24 L.Ed. 341.

In very clear language, Revised Statutes 1925, Art. 5933, sec. 28, declares the right of a party to a negotiable instrument to defend on the ground of want or failure of consideration against any person not "a holder in due course." The term "holder in due course" is defined thus: "A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith *and for value;*

"4. That at the time it was negotiated to him he had *no notice of any infirmity in*

*the instrument* or defect in the title of the person negotiating it." (Italics ours.) R. S. 1925, Art. 5935, sec. 52.

It would seem there could be no reasonable argument to support a contention that Largent, under the trial judge's conclusions of fact, did not have a perfect defense on the ground of want of consideration, unless the fact that he occupied the status of an accommodation party (for the payee) operated under the law to destroy the validity of such defense. Suppose that Largent had signed the note under the same circumstances he did, except that he had not done so at the request of the payee bank? In other words, suppose, instead of being requested by the payee bank to sign the note, he had been requested to do so by Emmett Grimes, but with no new or independent consideration moving either to himself or to the said Emmett Grimes and no detriment to the bank. Could it reasonably be contended that he did not have a perfect defense against any claim of his liability on the note in the suit of any holder, except "a holder in due course?" To so hold, it seems to me, would be to deny a right clearly recognized by said section 28 of the Negotiable Instruments Law. Can it reasonably be contended that because Largent, under such circumstances must have known that some holder would probably give credit, based upon his apparent liability as a maker of the note, such fact would constitute an estoppel precluding the defense of want of consideration? Every one who signs his name to a negotiable instrument must know that the very fact of its negotiability constitutes a basis of credit in any commercial transaction in which such instrument may be used. If, therefore, such knowledge may alone constitute an estoppel precluding the defense of want of consideration then such defense, although so clearly recognized by the statute with a definite limitation or exception stated therein, in fact has a very narrow field of operation, if practically any at all. If such be the case, it was idle for the statute to declare in effect, as it does, an exception to the availability of such defense to render it not available against "a holder in due course." Of what practical avail would be a defense, although clearly sanctioned by law, if upon the same facts an estoppel would exist to cut it off. The reasonable interpretation of the law, it seems to me, is that the commercial world must take notice of the fact that one in becoming the holder of a negotiable instrument must be "a holder in due course" in order to cut off a defense of want of consideration. Charged with that notice there could be no estoppel in favor of one not "a holder in due course" on the ground that faith and credit had been given to an apparent liability which in law had no existence, without destroying the effect of the statute purporting to sanction such defense.

It remains to consider whether the status of Largent as an accommodation maker of the note (for the original payee), a matter, by the way, unnecessarily put in issue by Largent himself, has the legal effect to destroy the defense of want of consideration which clearly he would have were he not such accommodation party. This question involves the construction of said Art. 5933, secs. 28 and 29. Section 28, as already noticed, makes certain the right of one to defend on the ground of want of consideration, against all parties not holders in due course. Section 29 relates to the liability of an accommodation party. It defines an accommodation party thus: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, *without receiving value therefor,* and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a *holder for value,* notwithstanding such holder at the time of taking the instrument knew him to be *only an accommodation party.*" (Italics ours.) That an accommodation party under such definition is one who signed the instrument "without receiving value therefor" does not mean by the phrase quoted that the instrument, as to him, is without consideration necessary to support the agreement as a contract. The status of an accommodation party to a negotiable instrument has no reference whatever to whether the instrument is supported by consideration or not. No one would question that if Grimes, before his execution of the original note, or before receiving the consideration for the note had been required to procure the signature of Largent as a condition to his receiving the consideration, the instrument would have been supported by a consideration sufficient to make it a contract evidencing the legal liability of Largent. But Largent would nevertheless have been an accommodation maker (for Grimes). He would have been such perforce of the above definition because he would have (himself) received *no value for signing* and have signed for the purpose of lending his name to Grimes. The term

"without receiving value therefor" cannot be held to be synonymous with "absence or failure of consideration", as those words are used in section 28, and both sections 28 and 29 be given effect. Neither can the term "a holder for value" as used in section 29 be held to be synonymous with "a holder in due course" as used in section 28, without bringing the two sections directly in conflict with each other. It never would be contended that an accommodation party, as defined in said section 29, would not be liable to "a holder in due course." The only reason for the provision of section 29 that he should be liable "to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party" was to extend the liability of an accommodation party beyond what it otherwise would be. In other words, such liability was thereby extended to include one not "a holder in due course" but who was only "a holder for value" even though he, at the time of becoming such, knew the accommodation party was only an accommodation party. The only infirmity in a negotiable instrument, as against which section 29 extends the liability of an accommodation party, is the infirmity that a party is only an accommodation party. Since an accommodation party may be such without reference to an original consideration sufficient to support the instrument as a contract, it necessarily follows that knowledge to the holder of an instrument that one party is an accommodation party is not knowledge that the note is without consideration. An infirmity in a negotiable instrument consisting of the fact that one of the parties is an accommodation party is not the same as an infirmity consisting of the fact that the instrument is without consideration to support it as a contract of one of the parties. Under sec. 28 if the instrument is without consideration to support it as a contract of one of the parties that defense of such party is available against any holder not "a holder in due course." That is to say, although such a holder may have been "a holder for value", yet unless he became a holder "before it was overdue" and had "no notice of the infirmity of want of consideration in the instrument" (section 52) his assertion of liability could not prevail over the defense of want of consideration.

If a party to a negotiable instrument has signed such instrument even though "without receiving value therefor" but has done so "for the purpose of lending his name to some other person" no recourse to the principle of estoppel is necessary in order to hold him liable "to a holder for value" even though such holder for value be not "a holder in due course." Such is the plain provision of such section 29. But that does not mean that such party, who, but for the fact that he is an accommodation party, would not be liable upon an instrument supported by no consideration, would be deprived of the defense of want of consideration, except, of course, as the law prescribes, namely, in a suit by "a holder in due course."

As a defense to an assertion of liability upon a contract whether a negotiable instrument or not, a prior or contemporaneous oral agreement between the obligor and obligee to the effect that the former is not to be bound by, and according to, his written promises set forth as provisions of the contract, by whatever name such an agreement be called, ought never to have had any recognition in any court. Proof of any such agreement would be a flagrant violation of the well established and time-honored Parol Evidence Rule, the nature and effect of which we have had occasion from time to time to consider and discuss in other cases, particularly Williamson v. Diltz, Tex.Civ.App., 101 S.W.2d 833; Cottingham v. Harrison, Tex.Civ.App., 89 S.W. 2d 255, and Robert & St. John Motor Co. v. Bumpass, Tex.Civ.App., 65 S.W.2d 399. Inaccurate and unfortunate expressions to be found in some of the decisions which seem to recognize that such rule has no operation as between the original parties to a contract, but only as between parties one of whom is in position to invoke the doctrine of innocent purchaser, no doubt account for the strange anomaly of decisions in cases in which it has apparently been deemed necessary to invoke the principle of equitable estoppel to shut out and render ineffective such agreements as defenses. The proposition is little short of an absurdity that in a suit by one of the original parties to a written contract by the other such party, he may introduce evidence as competent and admissible, of a prior or contemporaneous oral agreement "varying the time of payment, or reducing, or increasing the amount stipulated in the written contract to be paid, as for example (of the latter) an agreement that a less sum is to be paid upon a certain contingency or providing for a remission or rebate of a portion of the principal or interest, or pro-

viding that payment is to be made in something besides money", Robert & St. John Motor Co. v. Bumpass, supra [65 S.W.2d 402], and the other decisions of this court above cited. Such we understand to be a detailed partial statement of the Parol Evidence Rule, which in the first two of the above cases we construed to further extend so as to include within its operation a prior or contemporaneous oral agreement to the effect that the promisor was not to be liable at all, or liable only upon some contingency. The proposition that such a rule has no application between the original parties to a contract was urged and determined to the contrary in Williamson v. Diltz, supra [101 S.W.2d 834], it being our conclusion upon that point that the "rule as we understand it, where applicable at all, is just as applicable in a suit between the original parties to a contract where, of course, there can be no question of innocent purchaser, as it is in suits where that question is involved." It ought to require no argument to demonstrate that in a case in which the doctrine of innocent purchaser is applicable such application would render immaterial the proof of an agreement prohibited by the Parol Evidence Rule. Would it not be a strange interpretation of the law that a particular rule for the exclusion of evidence is only applicable in cases in which if the evidence were admitted it could be given no effect? That the rule had no application in cases in which the evidence, if admitted, would have the effect which the rule seeks to avoid?

Proof of oral agreements of the kind under discussion are not only excluded by the parol evidence rule, thereby rendering wholly unnecessary any resort to principles of estoppel in order to avoid the effect thereof; but evidence of such agreements in support of asserted rights should be held inadmissible as contrary to public policy. Every argument to support a proposition that such agreements should be held to create an estoppel, is equally valid to support the proposition that they should be excluded on the ground that it would be contrary to public policy to admit them as valid defenses.

It, therefore, seems clear to me that the decisions which the majority members of this court regard as controlling should not be considered so, particularly as respects the defense of want of consideration, considered as distinct from the defense of accommodation party. I cannot believe that by said decisions the Supreme Court has intended impliedly to sanction a proposition to the effect that a plea of want of consideration may always be effectively countered with a plea of estoppel with the undoubted practical effect of destroying the rights purportedly given by section 28 of the Negotiable Instruments Law.

What has been said assumes that Largent was an accommodation party for the payee. His own pleadings so allege and, of course, he thereby invites the court to treat him accordingly. I think, however, it may be seriously questioned whether he was an accommodation maker for the bank. The record does not show that when he signed the original note, or any renewal thereof, it was for the purpose of enabling the payee to negotiate the note. All implications of any such purpose are effectively excluded. In Brinker v. First Nat. Bank, Tex.Civ. App., 16 S.W.2d 965, 967, reversed on other grounds, Tex.Com.App., 37 S.W.2d 136, Judge McClendon, for the Austin Court of Civil Appeals, after observing that accommodation, as applied to notes and other paper, has a technical meaning not used in its broadest popular sense, and not necessarily determined by the fact that the payee may receive benefit or be accommodated by, or may solicit the signature of a party, further said: "It is only in those cases where the note is executed *for the sole purpose of its negotiation by the payee* in order that he may obtain credit thereby, * * that the instrument becomes in law accommodation paper for the payee." In support of that statement was cited Magill v. McCamley, Tex.Civ.App., 182 S.W. 22; Nalitzky v. Williams, 3 Cir., 237 F. 802; Skagit State Bank v. Moody, 86 Wash. 286, 150 P. 425, L.R.A. 1916A, 1215; German American State Bank v. Watson, 99 Kan. 686, 163 P. 637. The above statement has since been quoted with approval by the El Paso Court of Civil Appeals in Paden v. American State Bank & Trust Co., 103 S.W.2d 243, and by the Galveston Court of Civil Appeals in National Bank of Commerce v. Rogers, 125 S.W.2d 632.

The original note was already in the bank when Largent signed it. No right of action had accrued upon it in favor of the payee. The agreement which Largent alleges he had with the bank to the effect that he was not to be liable—an agreement contrary to his express written promise— he was precluded from proving both by the Parol Evidence Rule and because it

490

would be contrary to public policy to permit proof of such agreements. But his statutory and common law right to defend on the ground of want of consideration as against anyone asserting his liability except "a holder in due course"—which plaintiff was not—remained wholly unaffected. While the conclusions of fact of the trial court go far enough to show certainly or at least probably the existence of a valid defense, the conclusions of law seem to relate exclusively to the defense of accommodation maker. I concur in the view that the judgment should be reversed since, under the views expressed, the case was tried upon a wrong theory of law, with the result that the judgment is not supported by the trial judge's conclusions of law, but I think it should be remanded for a new trial upon the correct theory.

On Motion for Rehearing.

LESLIE, Chief Justice.

After careful consideration of the motion for rehearing in this cause, we have concluded to overrule same, but desire to cite, in addition to Brand v. Korth, 128 Tex. 488, 99 S.W.2d 285, and Murchison v. Saxon, 128 Tex. 420, 99 S.W.2d 288, the recent opinion by the Supreme Court in First National Bank of Santa Anna v. Frank Brown, Tex.Com.App., 131 S.W.2d 958. We think this last opinion of the Supreme Court confirms the correctness of the legal conclusions expressed in our original opinion.